ELLERBE, *Superintendent of Insurance Department, Appellant,* v. THE FARMERS & MECHANICS' MUTUAL AID ASSOCIATION; ARNOLD *et al., Intervenors.*

DIVISION ONE.

**Life Insurance:** ASSESSMENT COMPANY: INSOLVENCY: PAYMENT OF CLAIMS. Where an assessment insurance company becomes insolvent, and its affairs are vested in the superintendent of the insurance department, death losses must be paid *pro rata* from its assets as required by Revised Statutes, 1889, section 5934, although an assessment for the particular loss had been made and collected, but not paid to the beneficiary prior to insolvency.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Huff & Hereford* for appellants.

(1) The claim should share *pro rata* with other claims. R. S. 1889, sec. 5948; *Relfe v. Baker,* 13 Mo. App. 184; 2 Perry on Trusts [3 Ed.] sec. 841; *Carr v. Ins. Co.,* 33 Mo. App. 291. (2) In any event the amount in the hands of the superintendent as a trust fund should be exempted from any claim of intervenors, and should be used only as is pointed out in the section of the statute under which the said fund came into his hands. R. S., sec. 5934.

*George S. Grover* and *H. F. Simrall* for respondents.

Respondents' priority in equity arises out of the contract of insurance, and, therefore, impressed the funds in the receiver's hands with a trust which can only be discharged by the payment of respondents' claim in full. 1 Story on Equity Jurisprudence [13 Ed.] sec. 1231, p. 577; *Pinch v. Anthony*, 8 Allen (Mass.) 536; 1 Jones on Liens, sec. 37, p. 25; *People v. Bank*, 39 Hun (N. Y.) 187; *VanAlen v. Bank*, 52 N. Y. 1; *People v. Bank*, 96 N. Y. 32; *McLeod v. Evans*, 66 Wis. 401; *Peak v. Ellicott*, 30 Kansas, 156; *St. Louis v. Johnson*, 5 Dillon, 241; *Blaine v. Bourne*, 11 R. I. 119; s. c., 23 Am. Rep. 429; *Schiernberg v. Stephens*, 32 Mo. App. 314; *Hammerstein v. Parsons*, 38 Mo. App. 332; *Bank v. Hummel*, 23 Pac. Rep. (Col.) 986.

BLACK, J.—The general question in this case is whether the intervenors are entitled to a priority of payment of a death loss. The following are the material facts:

In 1887, the National Association of Farmers & Mechanics' Mutual Aid Association, an insurance company doing business on the assessment plan, was reincorporated under the act of March 30, 1887, by the name of the Farmers & Mechanics' Mutual Aid Association. In October, 1889, the company was adjudged insolvent, and its property vested in the superintendent of insurance. At the same time the circuit court appointed a commissioner to receive, and decide upon, all claims against the dissolved and insolvent corporation. The widow and heirs of Alfred M. Arnold filed their petition in the cause, asking that the death loss due to them on account of certificate number 23380 be paid in full, as a preferred claim. This intervening petition was referred to the commissioner to hear, and decide upon, the claim.

The bill of exceptions states that there were presented to the commissioner for allowance claims for death losses accrued before the dissolution of the company, amounting to $105,031; that the commissioner made a special report as to the Arnold claim, which is set out in full. This report shows that the old association issued to Mr. Arnold on the thirty-first of December, 1883, benefit certificate number 23380 for $1,500 payable to his widow and children; that he died the fourteenth of September, 1888, and proof of death was duly made in the following March; "that on or about March 15, 1889, the association levied assessment numbered 77 upon the members of said association for the purpose of raising money to pay the sum of $1,500 named in said beneficiary certificate number 23380, and during March and succeeding months in 1889 collected an amount in excess of $1,500 upon said assessment, and put the same into the funds of said company at its bank, said amount having been distributed by said corporation to its several funds as follows, to-wit: Whole amount collected on assessment number 77 (as nearly as can be ascertained), $4,293; beneficiary fund, $3,004.40; reserve fund, $214.60; general fund, $1,073. Said defendant paid sums for death losses accruing subsequent to the death of said Arnold, for which no assessment had been levied or collected. Said claim number 23380 is the oldest death claim existing against said company for which an assessment was ever levied or collected, there being a claim due on the death of one Vincent, who died before said Arnold, but said corporation never levied a special assessment to pay the claim of said Vincent, it being the intention of said company to pay said claim out of the emergency fund of said company."

When the superintendent took possession the company had on hand $1,231.83 deposited in the bank as a general deposit to the credit of the association. This

money had not been, by the association, appro-priated to the payment of the Arnold claim. The company also had in the hands of the superintendent the sum of $5,500 *previously* deposited with and by him, held under the provisions of section 5864, Revised Statutes of 1889.

The policy or certificate issued to Arnold by the old association states that he was a member of local aid society number 236, and a beneficiary member in section number 1, and in case of death, while a member, would be entitled to a mortuary benefit of seventy-five cents for each dollar received from the assessment made for that purpose, not to exceed $1,500. The company then agrees on the death of Arnold to levy an assess-ment of $1 each upon all beneficiary members in that section, and when collected to pay the benefit at its office to his widow and heirs.

The articles of association adopted on reorganiza-tion provide that the company shall have power to create and maintain a beneficiary fund, general fund, reserve fund and emergency fund ; that upon proof of the death of a member the association will, when there is not money in the beneficiary fund to pay the benefit, levy an assessment of $1 on each member, and pay to the beneficiary fund seventy-five or eighty per cent. of the amount collected for the payment of benefits. When the beneficiary fund is sufficient to pay the loss, no assessment will be made.

On this state of facts the commissioner decided that the Arnold claim must share *pro rata* with other claims; but the circuit court ordered payment thereof in full, to which ruling the superintendent excepted. The judgment of the circuit court proceeds upon the theory that the assessment was levied and collected for the specific purpose of paying this benefit or loss, and the amount, to the extent of at least $1,500, constituted a trust fund for that purpose, and the company had no right to place this money in the

emergency fund held by the superintendent of insurance.

There is, it may be observed in the first place, nothing in the commissioner's report to show that any part of the Arnold assessment went into the emergency fund on deposit with the superintendent of insurance. That is the fund provided for by section 5864, and was doubtless created at or about the time of the reorganization of the old to this new company. But for all the purposes of this case it will be assumed, not decided, that the intervenors would be entitled to priority over other policy-holders, had the company remained solvent and continued to conduct its proper business of insurance. This right of priority being conceded, it would, of course, continue after dissolution unless some statute directs a different order of distribution. The question then is whether the statute controls this matter. This company was reorganized under the act of 1887, and is governed by that act. Section 5862 makes the indebtedness accruing upon a policy or certificate "hereafter issued" a lien upon all the property and effects of the corporation with priority over all indebtedness thereafter incurred, "except as may be provided by the law in case of the distribution of assets of an insolvent corporation." And further on it is provided: "And, upon the dissolution of said corporation, the superintendent of the insurance department shall take charge of its assets and affairs, and wind up the same, as now provided by law in the case of life insurance companies."

These provisions of the law show that these insurance companies doing business on the assessment plan are, in case of insolvency and dissolution, to be wound up and their assets distributed the same as other life insurance companies. We do not see what other meaning can be attached to the clauses before quoted. The assets of this company are, therefore, to be distributed according to section 5934. According to that

section the death losses must share *pro rata* in the emergency fund on deposit with the superintendent of insurance, and that fund not being sufficient to satisfy the policy claimants, they and the other creditors will share in the other assets as is there provided. There is a strong equity in favor of the intervenors for full payment of their demand ; but it was competent for the legislature to provide how.the assets of this corporation should be distributed in case of insolvency. Such a provision has been made, as we understand the statute, and it must be followed.

The judgment is reversed and cause remanded. All concur.