Ellerbe v. The United Masonic Benefit Ass'n.

---

ELLERBE, Superintendent of Insurance, v. THE UNITED MASONIC BENEFIT ASSOCIATION; CANNON *et al.*, *Intervenors, Appellants.*

|114  501|
|122   58|

### Division One, March 13, 1893.

1  **Life Insurance**: ASSESSMENT COMPANY: INSOLVENCY: PAYMENT OF CLAIMS. Where an assessment insurance company becomes insolvent, and its affairs are vested in the superintendent of the insurance department, death losses must be paid *pro rata* from its assets, as required by Revised Statutes, 1889, section 5934, although an assessment for the particular loss had been made and collected but not paid to the beneficiary prior to insolvency. *Ellerbe v. Aid Ass'n*, 106 Mo. 13, affirmed.

2  ————: ————: ————: LAW IMPAIRING OBLIGATION OF CONTRACT. Section 5934, *supra*, is not a law impairing the obligation of a contract because of its making a different disposition of the insolvent company's assets than that provided for by the certificates of insurance, since the law authorizing the company's existence became a part of its contracts, and by such law parties contracting with it agreed to be governed.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*W. H. Miller* and *Dickson & Smith* for appellants.

(1) The circuit court erred in overruling the exceptions of intervenors to the report of the commissioner, and in refusing to decree the sum of $4,282.89 to be a trust fund in the hands of plaintiff for the payment of intervenors' claim, and in failing to give intervenors a lien thereon prior to the claims of other persons. 2 Story's Equity Jurisprudence [13 Ed.] sec. 1231, p. 577; *Pinch v. Anthony*, 8 Allen, 536; 1 Jones on Liens, sec. 37, p. 26; *Van Alen v. Bank*, 52 N. Y. 1; *People v. Bank*, 96 N. Y. 32; *St. Louis v. Johnson*, 5 Dillon, 241; *Schiernberg v. Stephens*, 32 Mo. App. 314; *Matter Equitable Ass'n*, 61 Hun, 299. (2) Intervenors are entitled, under the contracts evidenced by the certificates in evidence, to the fund in question. Any statute which seeks to make disposition of said fund otherwise than as provided by said certificates, impairs the obligation of the contracts created by said certificates, and is void. Story on the Constitution [5 Ed.] sec. 1385; *Edwards v. Kearzey*, 96 U. S. 595; *State v. Miller*, 50 Mo. 129; *Jackson Place Skating and Bathing Rink*, 52 Mo. 552; *Nilson v. County of Chariton*, 60 Mo. 386.

*Huff & Hereford* for respondent.

Section 5934 controls the distribution of funds of this company, and intervenors are entitled only to *pro rata* payment. *Ellerbe v. Mut. Aid Ass'n*, 106 Mo. 13.

BRACE, J.—The appellants, intervenors herein, are the beneficiaries and their representatives of the

three certificates of membership mentioned in the agreed statement of facts, on which the issue was tried below, and which is submitted here, as follows:

"That, on the second day of January, 1883, the Masonic Mutual Benefit Society of Missouri issued to James W. Cannon three certificates of membership, number 354, class 5, number 1237, class 5, and number 1929, class 5, in the said Masonic Mutual Benefit Society of Missouri; that said Masonic Mutual Benefit Society of Missouri ceased to exist, to-wit, in the year 1887, and was then succeeded by defendant, the United Masonic Benefit Association of Missouri, a corporation duly incorporated on the —— day of ——, 1887, under the laws of the state of Missouri relating to assessment life insurance companies, and, from said —— day of ——, 1887, up to the date of its dissolution, engaged in doing a life insurance business on the assessment plan, which said last mentioned association assumed all the liabilities of said Masonic Mutual Benefit Society of Missouri, including the said certificates issued in favor of said James W. Cannon.

"That James W. Cannon died on the twenty-first day of May, 1891; and that on the twenty-ninth day of June, 1891, proper proof of the death of said James W. Cannon, as required by said certificates, was made and filed in the office of the secretary of said defendant in the city of St. Louis, Missouri; that on, to-wit, December 21, 1891, assessment numbers six and seven were levied on the members of defendant for the purpose of paying certain claims mentioned in said assessment, among them being an amount, under death number one thousand and sixty-three, on account of the death of said James W. Cannon, for the sum of $5,000, said sum of $5,000 being the amount to which said intervenors were entitled under said certificates; that, during the months of December, 1891, and January,

1892, there was collected by defendant, and by it received, on account of said assessment numbers six and seven and for the purpose of paying the claims mentioned therein, the sum of $12,300.50; and said sum of $12,300.50 was by said association deposited in bank in its general account, together with funds received from other assessments; that there was paid out of said sum of $12,300.50 the following death claims mentioned in said assessments numbers six and seven, namely William M. Young, $1,000, O. J. Kerby, $2,000, and E. C. Starin, $2,000; that out of said sum of $12,300.50 so collected under said assessment numbers six and seven there was paid by defendant certain expenses amounting to the sums of $239.23 and $2,278.38, leaving a balance remaining in bank to the credit of said company, realized under said assessment, numbers six and seven, the sum of $4,782.89, which amount was a part of the general deposit of said company at the time of its dissolution.

"That the claim of intervenors arising under said three certificates, by reason of the death of said James W. Cannon, is the oldest death claim existing against defendant for which an assessment was ever levied or collected. And the proof of death of said James W. Cannon is the oldest proof of any death, the claim for which is unsettled.

"That on the twenty-ninth day of January, 1892, plaintiff, as superintendent of the insurance department of the state of Missouri, filed in said cause his petition stating that defendant was insolvent and praying that it be dissolved and its assets turned over to plaintiff for distribution according to the statutes of Missouri in such cases made and provided; that on, to-wit, the first day of February, 1892, defendant was adjudged to be insolvent by this court and was dissolved, and its assets ordered turned over to plaintiff for distribution.

"That the assets of defendant were turned over to plaintiff as such superintendent of insurance, and among said assets was the said sum of $4,782.89, which had been collected and received by defendant under said assessments numbers six and seven, and for the specific purpose, among others, of paying said $5,000 claim on account of the death of said James W. Cannon, as mentioned. Said sum of $4,782.89 came into and is now in the hands of plaintiff, as such superintendent, as a portion of the general deposit of said dissolved company at the time of its dissolution, and was found deposited in the bank of said company with the proceeds of other assessments."

Upon this state of facts the commissioner who was appointed by the court to pass upon claims allowed the intervenors' claim in the third class, but denied it preference over other claims of the same class. Upon exceptions filed by intervenors to the report of the commissioner, his report was confirmed by the circuit court and the intervenors appeal from the judgment of said court overruling their exception and confirming said report.

Appellants contend that the commissioner erred in failing to find that they are preferred creditors as to said sum of $4,782.89, and that the court erred in approving his finding and in refusing to decree the sum of $4,282.89 (being said former amount less expenses legitimately chargeable thereon) to be a trust fund in the hands of the superintendent of insurance for the payment of appellants' claims, out of which they were entitled to payment in preference to other claims allowed in the third class.

I. The United Masonic Benefit Association was a life insurance company on the assessment plan, organized, it would seem, under the law of 1887, Session Acts, p. 199. It is provided by that law that upon the

dissolution of such a corporation, "the superintendent of the insurance department shall take charge of its assets and affairs and wind up the same, as now provided by law in case of life insurance companies." Revised Statutes, 1889, sec. 5862. By the general provisions in regard to the distribution of the assets of dissolved life insurance companies, the assets are to be applied first, to the payment of the expenses of winding up the concern, second, to the payment of all taxes, and third, to the payment of death losses and matured policy claims. Revised Statutes, 1889, sec. 5948. No preference is given by this section of the statute; on the contrary, the idea of preference is excluded by placing all death losses in the same class in order that they may all be treated alike, *i. e.*, be paid in the same proportion out of the assets. And by Revised Statutes, 1889, section 5934, it is provided in case of dissolution that the superintendent shall reduce all the securities of said company on deposit with him to money, and "apply the same, less the expenses herein provided for, to the liquidation of policy claims *pro rata.*"

It is manifest from this legislation that it was the intention of the legislature to put all claims for death losses matured at the time of the dissolution of the company and remaining unpaid, on the same footing; and it is made the duty of the superintendent, out of the assets of such dissolved company then in his hands, or that may come into them by virtue of the proceeding dissolving the corporation, after first paying the expenses of the administration of its affairs and taxes upon its property, to distribute the remainder, if there be not enough to pay the death losses in full, among the claimants for such losses *pro rata*; and so we held in *Ellerbe v. Mutual Aid Ass'n*, 106 Mo. 13. The ruling in that case is decisive of this, as we cannot see

how, under these statutory provisions, it is possible to hold otherwise.

II. The fund in bank to the credit of the company was a part of the general assets of the company, although collected upon an assessment made to raise a fund for the payment of intervenors' loss, among others; it was never set apart for that purpose in any way, but was on deposit to the general credit of the company and came to the hands of the superintendent impressed with no trust in favor of the intervenors. Nor have the intervenors in this as strong an equity for a preference as in a former case. For there it appears that the old company agreed, upon the death of its member, to make an assessment and that the beneficiary should receive seventy-five cents out of every dollar that should be collected by such assessment. Here the old company only promised, in case of death, to pay so much for each member of the division according to the several classes in which it was divided. If in the former case there was no setting aside of the particular fund to pay the intervenors' loss, there was at least a promise to apply that fund to the payment of such loss, but here there is no setting aside of the fund in question for the payment of intervenors' loss, nor even a promise to do so; and if we found it impossible to recognize the intervenors' equity in the former case, in the teeth of the statutory provisions cited. we certainly cannot do so in this.

III. There is nothing in the suggestion that this legislation impairs the obligation of the contract in either case. The right of the intervenors to share in the assets of the dissolved corporation exists by virtue of the membership of the deceased at the time of his death in the company dissolved; the law of its existence is a part of all its contracts with its members. When the members of the old company became members of

the new, they voluntarily subjected themselves and their contract with the old company, to the law governing the organization of the new association. From the time of such voluntary reorganization the law which authorized it became a part of their contract with the newly organized association and by it they agreed to be governed. The judgment of the circuit court is affirmed. All concur.