HANFORD, *Appellant*, v. MASSACHUSETTS BENEFIT ASSO-CIATION.

Division One, May 14, 1894.

1. **Life Insurance**: ASSESSMENT POLICIES: MISREPRESENTATIONS. Section 5849, Revised Statutes, 1889, which provides that no misrepresentation made in obtaining a life insurance policy shall render it void, unless the misrepresentation actually contributed to the event on which the policy becomes due, and that whether it so contributed shall be a question for the jury, does not apply to policies issued on the assessment plan under article 3, chapter 89 of Revised Statutes, 1889, as the latter article provides that a company doing business under its provisions shall not be subject to any of the provisions of the general insurance law unless so expressly declared in that article.

2. ———: ———. A life insurance policy authorizing the company's board of directors to levy assessments by special notice, is within the meaning of Revised Statutes of 1889, chapter 89, article 3, relating to insurance on the assessment plan, though it further provided for certain fixed payments.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*C. P. & J. D. Johnson* for appellant.

(1) The defendant is simply an insurance company, and the contracts sued on are purely those of life insurance. They have none of the elements of insurance upon the assessment plan, as such contracts are defined by our laws. Session Acts, Mo. 1887, p. 199; 2 R. S. Mo. 1889, sec. 5860; Bliss on Life Insurance, sec. 3, pp. 4, 5; Cooke on Life Insurance, sec. 1, p. 2;

Bacon on Benefit Societies, sec. 52, p. 62; Niblack on Mutual Benefit Societies, sec. 163, p. 193; 2 May on Insurance [3 Ed.], sec. 550; *Commonwealth v. Weatherbee*, 105 Mass. 149; *Rensenhouse v. Seeley*, 72 Mich. 603; *Farmer v. State*, 69 Tex. 561; *Sherman v. Commonwealth*, 82 Ky. 102; *Supt. v. Ainsworth*, 71 Ala. 436; *Bolton v. Bolton*, 73 Me. 299; *Chisholm v. Ins. Co.* 52 Mo. 213. (2) The defendant is not an association formed for benevolent or fraternal beneficial purposes, and it is therefore subject to all the provisions of the insurance laws of Missouri. Secs. 1 to 13, chap. 115, Pub. Stat. Mass. 1882, pp. 655, 656, 657; secs. 1 to 14, chap. 183, Sup. Pub. Stat. Mass. 1888, pp. 291 to 295; sec. 2821 to 2835, 1 R. S. Mo. 1889; sec. 5860 to 5872, 2 R. S. Mo. 1889; *State ex rel. v. Benevolent Society*, 72 Mo. 146; Bliss on Life Insurance, pp. 6 and 7 and cases cited; Bacon on Benefit Societies, sec. 52 and cases cited; *State ex rel. v. Benefit Ass'n*, 6 Mo. App. 163; Niblack on Benefit Societies, sec. 163 and cases cited; *State v. Brawner*, 15 Mo. App. 597. (3) And, under the policies of insurance here sued on, the question as to whether any matter misrepresented by T. C. Hanford contributed to his death, and thus rendered said policies payable, was one of fact for the jury. Sections 5849 and 5850, 2 R. S. Mo. 1889; *Boggs v. Ins. Co.*, 30 Mo. 63; *Marion v. Ins. Co.*, 35 Mo. 148; *Schulter v. Ins. Co.*, 62 Mo. 236; *Conover v. Ins. Co.*, 3 Dillon, 217; *White v. Ins. Co.*, 4 Dillon, 177; *McConnell v. Mut. Aid Ass'n*, 79 Iowa, 757. (4) The proviso in section 5869, of article 3, chapter 89, Revised Statutes, is not intended to exempt "contracts of insurance upon the assessment plan" from the operation of sections 5849 and 5850, Revised Statutes. Such intent can not be gathered either from the letter or context of the statute. Laws of Mo., 1874, p. 89; arts. 2 and 3, chapter 89, R. S. 1889; *Conner v. Railroad*, 59 Mo. 289;

*State v. Diveling,* 66 Mo. 375; *Neenan v. Smith,* 50 Mo. 525; *Spitler v. Young,* 63 Mo. 42; *Tittmann v. Edwards,* 27 Mo. App. 492.

*H. D. Wood* and *Rowell & Ferriss* for respondent.

(1) Where, as in the case at bar, the insured in his application warrants the statements therein to be true, and agrees that any untrue statement, or any conceal- ment of facts, may forfeit all rights under the contract, and the assured, as part consideration of the contract agrees that the statements made in the application are the basis of the contract of insurance, and are war ranted to be true in all respects, all the representations are warranties, and any misrepresentation, whether material or immaterial, avoids the policy. *Whitmore v. Supreme Lodge,* 100 Mo. 47; *Reichenbach v. Ellerbe,* 115 Mo. 588; *Linz v. Ins. Co.,* 10 Mo. App. 364; *Ins. Co. v. France,* 91 U. S. 510; *Jeffries v: Ins. Co.,* 22 Wall. 47; *Ins. Co. v. Pyle,* 44 Ohio State, 19; *State ex rel. v. Ben- efit Ass'n,* 42 Mo. App. 485; *Johnson v. Ins. Co.,* 83 Maine, 183; *Mayer v. Ins. Co.,* 49 N. Y. Sup. Ct. 237; May on Ins., par. 158; *Brennan v. Society,* 4 Daly, 296; *Sullivan v. Co.,* 12 N. Y. S. 923; *Co. v. McTague,* 49 N. J. L. 587; *Cazenove v. Ass'n Co.,* 6 C. B. (N. S.) 437; *Cobb v. Co.,* 20 Ins. L. J. 215; *Phillips v. Ins. Co.,* 9 N. Y. Supp. 836. And the proof of loss was *prima facie* evidence of the facts stated therein, against the insured and in favor of the company. *Ins. Co. v. Newton,* 22 Wall. 32. (2) Companies doing business of life insur- ance on the assessment plan under article 3 of Revised Statutes, 1889, are not subject to the general laws of insurance of the state which include sections 5849 and 5850, and the defendant issued its certificates under that plan in this case. *Whitmore v. Supreme Lodge,* 100 Mo. 46; Laws of Mo. 1881, p. 87; Laws of Mo.

1887, p. 199 to p. 205, secs. 1 to 14; R. S. 1889, chap. 89, art. 3, especially secs. 5860, 5865, 5869; Laws of Mo. 1891, p. 166; *Ellerbe v. Co.*, 106 Mo. 13; *Ellerbe v. Co.*, 114 Mo. 501; *Hastings v. Littledale*, 150 Mass. 100; Laws of Mass. 1885, chap. 183; Laws of Mass. 1874, chap. 375; Laws of Mass. 1877, chap. 204; Bacon on Benefit Societies, par. 50; *State v. Ins. Co.*, 26 Ohio St. 23; *Supreme Order v. Fairnan*, 62 How. 387; *United States v. Babbitt*, 66 U. S. 55; *Beaumont v. Irwin*, 2 Sneed, 301. (3) Nor should section 5849 be construed to extend to warranties which the parties make a part of the contract of insurance, and thus deprive insurance companies of the right to so make contracts as to secure protection from fraud, and to make such defense in court. *State v. Loomis*, 22 S. W. Rep. 350, and cases cited; Const. Mo., art. 2, sec. 10; *Landis v. Campbell*, 79 Mo. 439.

BLACK, P. J.—The defendant is a corporation organized under the laws of the state of Massachusetts. It has and holds a certificate from the insurance department of this state, stating that it has complied with all the requirements of our laws and is authorized to do business here "on the assessment plan." This suit is based upon two policies issued by the defendant upon the life of Thomas C. Hanford, each in the sum of $5,000, payable to the plaintiff who is the wife of the insured.

The applications for the policies were in writing and were both signed by the insured on the fifth of December, 1889, at the city of St. Louis in this state; and the policies bear date the eleventh of the same month and year. In each application Thomas Hanford was asked a number of question, to each of which he made answer in writing. He was asked: "Do you usually have good health?" to which he answered,

"yes." He was also asked: "How long since you were under the care of a physician, and for what cause?" to which he answered, "not for many years." In the concluding part of each application there is this stipulation: "I do hereby warrant each and all of the foregoing particulars and statements to be true." Each policy provides: "The statements and declarations made by and on behalf of said member in his application to become a benefit member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on the faith of which this policy is issued, are warranted to be in all respects true, and that no fact has been suppressed," etc.

The defendant's answer sets up the matters before stated, according to their legal effect, and avers that the answers made by Hanford to the questions propounded in the applications were untrue.

The evidence produced by the plaintiff shows that the deceased was in a hospital in the city of St. Louis and under the care of the physician of that institution for two weeks in April or May of the year of 1889. He was in the same hospital and under the care of the same physician from thirty-first of August to the nineteenth of September of the same year. As before stated the applications were made on the eleventh of the following December. He was again in the hospital and under the care of a physician from the twenty-first of July, 1890, to the date of his death, which was the fifth of September, 1890.

By the terms of each policy Hanford is made a benefit member of the association, and the association thereby agrees to pay to the plaintiff $5,000 in ninety days after proof of the death of Hanford. Each policy is issued in consideration of $20 paid, and upon other conditions therein set out. The condi-

tions material to the questions raised in this suit are as follows:

"*Sixth.* There shall be paid by the member under this contract, in forty days from the date thereof, and annually from said date thereafter, to the treasurer of the association, an assessment of $15 as a part of the expense fund, which fund is at the sole disposal of the officers of the association.

"*Seventh.* The member shall further pay under this contract, at the office of the association in Boston, Massachusetts, bi-monthly, on the first business day of January, March, May, July, September and November, respectively, of each and every year, the assessment specified in the table of rates printed on the back hereof, for his age at entry, unless the board of directors shall by special notice require a different amount, and in such case the assessment may be based upon the current age of the member. Such assessments, excepting the sum specified in section 6, for expense fund, can be used only for the payment of death and disability claims, protection of the death fund and the emergency fund. Twenty per cent. of all such assessments may be carried to the emergency fund. *  *  * The member may, if he so elect, make his payments semiannually or annually in advance, in accordance with the table of rates printed on the back of this policy. If the mortality experience of this association shall require any variation from said rates in any call, due notice will be given."

The plaintiff called the defendant's adjuster, who gave evidence to the following effect: The defendant has its principal office in Boston, Massachusetts. The principal officers are a president, treasurer, comptroller and adjuster, who receive salaries ranging from $2,000 to $10,000 per annum. The defendant transacts business in most of the states of the union. The business is con-

ducted by a board of directors composed of the original incorporators and their successors. The policy holders have no vote in the election of directors, nor do they have any voice in the management in the affairs of the company. There is no lodge system connected with the organization, except there are a few boards or councils in different cities in Massachusetts, but none outside that state. These boards seem to have no duties to perform other than to solicit risks. The form of the policies was changed in 1888. Since that time the defendant has used policies in form like those in suit. Since the change in the form of the policies no assessments have been made, other than those fixed by the table of rates on the back of each policy.

On this state of the case the trial court nonsuited the plaintiff, on the ground that the representations were warranties, and being untrue on the plaintiff's own showing, she could not recover. The plaintiff contends that there was error in this ruling for two reasons: *First.* The policies are not assessment plan policies, and are therefore subject to sections 5849 and 5850, Revised Statutes, 1889. *Second.* If held to be assessment plan policies, they are still subject to those sections.

1. That the defendant is doing a life insurance business in this state admits of no doubt; and it is equally clear that these policies are not benefit certificates within the meaning of our statute relating to fraternal beneficial associations. The policies are therefore assessment plan policies, or they are governed by the more general statutes relating to life insurance. The first question which we shall consider is whether said sections apply to policies issued under the statute law relating to insurance companies doing business on the assessment plan.

To an understanding of this question it is thought

proper to look to the history of our statutes concerning life insurance and life insurance companies. In 1869 the legislature established an insurance department and gave to the superintendent thereof extensive powers of visitation. Such companies were required to deposit securities to protect the policy holders. The two sections now in question were enacted in 1874. The first provides that "no misrepresentation" made in procuring a policy "shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury." The second provides that a defense based upon misrepresentations shall not be valid, unless the defendant shall deposit in court for the plaintiff the "premiums received on such policies." These sections were carried into the revision of 1879, and into the revision of 1889, and are a part of article 2 in the chapter relating to insurance. Article 2 relates to life insurance only.

At and prior to 1880 many associations organized under the law relating to benevolent associations attempted to do an insurance business without complying with the laws concerning life insurance, but such companies were suppressed by the courts. *State ex rel. v. Benefit Association*, 6 Mo. App. 163; *State ex rel. v. Benevolent Society*, 72 Mo. 146. The opinion in the last named case was promulgated in 1880. Some concessions were made to charitable and benevolent associations by acts passed in 1881. In 1887 an act was passed entitled "An act to provide for the incorporation and regulation of associations, societies or companies doing a life or casualty insurance business on the assessment plan." That entire act was carried into the revision of 1889 and constitutes article 3 of the chapter on insurance. This

act of 1887 (now article 3 of chap. 89, R. S. 1889)
defines contracts of insurance on the assessment plan,
provides for the organization of corporations to carry
on such business, and provides that foreign insurance
companies may be allowed to carry on such business in
this state. In one or two instances it makes these
assessment plan corporations subject to the general life
insurance laws. *Ellerbe v. Mutual Aid Association*, 106
Mo. 13; *Ellerbe v. Benefit Association*, 114 Mo. 501.
But with one or two express exceptions this act pro-
fesses to be a full and complete statute in and of itself.
Section 5869, which is a part of said article 3, makes
it the duty of all such companies to make a statement
of their affairs annually to the superintendent of insur-
ance, invests that officer with visitorial powers, makes
provision for the service of process on foreign com-
panies by reference to a section of the general law, and
then concludes: *"Provided, always,* that nothing
herein contained shall subject any corporation doing
business under this article to any other provisions or
requirements of the general insurance laws of this state
except as distinctly herein set forth.*"

We are at a loss to see any good reason why the
two sections concerning misrepresentations should be
applied to what are denominated old line companies
and not to these assessment plan companies, but the
language of the proviso just quoted is strong and
explicit. By it corporations doing business under that
article are not subject to any other *provisions or require-
ments* of the general insurance laws, *except as distinctly
herein set forth.* The effect of this proviso is to say
the two sections concerning misrepresentations shall
not apply to assessment plan companies. There is
nothing in the history of the laws before mentioned
which stands opposed to this conclusion. That history
rather shows a determination on the part of the legisla-

ture in recent years to favor assessment plan insurance. In the case of *McConnell v. Mutual Aid Association*, 79 Iowa 757, there were no words of exclusion as there are in the law we have in hand, and hence that case is not in point, for without the words of exclusion we should reach a different result from that now declared. We must, therefore, conclude that sections 5849 and 5850 do not apply to assessment plan contracts.

2. The next question is whether these policies are assessment plan contracts. Such contracts are defined by the statute. Section 5860 provides: "Every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan." This definition does not mean that the amount of the benefit to be paid by the company to the beneficiary can not be a fixed amount; for section 5862 declares that every such policy or certificate "shall specify the exact sum of money which it promises to pay upon each contingency insured against," and the number of days in which the benefit will be paid after proof of loss. It is also declared that the company shall be obligated to the beneficiary for the payment of the sum specified. It is therefore perfectly clear that the sum to be paid to the beneficiary may, and indeed must, be a fixed and defined amount. In this respect these policies conform to the statute.

It is further suggested that these policies are regular old line premium policies and therefore not within the plan marked out by the statute. It is true the fifteen dollars to be paid and used as an expense fund is a fixed and defined sum to be paid annually and is in

no sense an assessment. According to the first clause of the seventh condition of the policy the member must make a monthly payment at fixed and defined dates during his life, and the amount to be paid bi-monthly is also fixed by the table of rates. Thus far these policies are premium policies, for it does not make these fixed rates, payable at specified dates, assessments, to call them by that name. But it is also provided in and by the policies that the board of directors may call for and require the payment of a different amount by giving special notice, and the amount called for may be based upon the current age of the member and the mortality experience of the association. The statute is broad enough to allow assessments to be based on the age of the member, and the frequency of the calls on the mortality experience of the particular association. Our statute calls for an emergency fund and so do these policies. We think these contracts come within the statute and are contracts of insurance on the assessment plan as that plan is defined by the statute. The articles of association and by-laws of the defendant are not before us, and from the facts disclosed by this record, we can only say these policies are assessment plan contracts.

Our statute concerning these associations seems to be in most respects the same as the Massachusetts act of 1885, but we have been cited to no case from the courts of that state, having any bearing upon the questions presented by this record.

The representations made by the deceased are, by the terms of the applications and policies, made warranties, and the plaintiff's own evidence shows beyond all doubt that the representations were untrue. The representations being warranties and untrue, the plaintiff must fail. The judgment is affirmed. All concur.