NANNIE R. SPARKS, Respondent, v. KNIGHT TEMPLARS & MASONIC LIFE INDEMNITY COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1895.

1. **Life Insurance:** ASSESSMENT PLAN: STATUTE. The proviso to section 5869, Revised Statutes, 1889, places insurance companies on the assessment plan outside the provision of section 5855, and such provisions relating to suicide do not apply to the policies of such companies, following *Hanford v. Benefit Association*, 122 Mo. 50.

2. ———: ———: INSANITY. Where the provisions of a policy of life insurance provide that it shall become void in case of suicide whether voluntary or involuntary, sane or insane, and it is admitted that the insured intentionally killed himself with a razor while insane, the beneficiary can not recover on the policy.

3. **Appellate Practice:** CONSTITUTIONAL LAW: SUPREME AND APPELLATE COURTS. Under the constitution, the court of appeals must regard the last ruling of the supreme court on any question of law or equity as controlling authority in all cases, and the court of appeals can not render a decision conflicting with the latest decision of the supreme court and then certify the decision to the latter court because of such conflict.

4. ———: CONSTITUTION: RIGHTS OF LITIGANT. It is a constitutional right belonging to every litigant to have judgment in the court of appeals in accordance with the last previous ruling of the supreme court and no transfer to the latter court can take place until one of the appellate judges deems the decision of the appellate court contrary to some decision of the supreme court.

*Appeal from the Johnson Circuit Court.*—HON. W. W. WOOD, Judge.

REVERSED AND REMANDED (*with directions*).

*Huston & Parrish* for appellant.

(1) Suicide, under the terms and conditions contained in the application and certificate or policy in this case, forfeits the policy. *Bigelow v. Ins. Co.*, 93 U. S. 284; *Ins. Co. v. Crandall*, 120 U. S. 527; *DeGogorza v. Ins. Co.*, 65 N. Y. 232; *Adkins v. Ins. Co.*, 70 Mo. 27; *Ins. Co. v. Ainsworth*, 71 Ala. 436. (2) The statutory provision contained in section 5855, page 1385, Revised Statutes, 1889, is not applicable to companies doing business on the assessment plan. The law governing that class of insurance is found in article 3, commencing on page 1387, Revised Statutes, 1889. That article is a complete scheme for the government of assessment companies. The appellant's contention upon this point is directly sustained by the supreme court of this state in the recent case of *Hanford v. Benefit Association*, reported in number 6, volume 26, at page 680, Southwestern Reporter. In that case the defendant pleaded misrepresentation in obtaining the policy. The contention was that sections 5849, 5850 applied to assessment companies. The trial court denied this contention, and the supreme court affirmed the judgment in favor of the company. That case is decisive of this one, and concludes argument upon it. We, therefore, submit that the case ought to be reversed simply without remand.

*J. W. Suddath* for respondent.

(1) Suicide, under the terms and conditions contained in the application and certificate or policy in this case, does not forfeit the policy. Revised Statutes, 1889, section 5855, page 1385. (2) The provisions of section 5869, Revised Statutes, 1889, does not exempt this company from provisions of section 5855. (3)

Article 3, chapter 89, Revised Statutes, 1889, is a complete scheme for the government of assessment companies, only in so far as the duties to the state are concerned, but does not attempt to regulate the duties of such companies to the insured. (4) Section 5869, of article 3, does not intend to exempt assessment companies from the provisions of article 2, entitled life insurance, but only from the provisions of article 5, which is the general insurance law.

ELLISON, J.—Plaintiff is the widow of Samuel P. Sparks, and is beneficiary in a life insurance policy taken out by him, and which was issued on what is designated by the statute as the assessment plan. The policy was for $2,000, and contained, among other provisions, the following: That, "in case of the self destruction of the holder of this policy, whether voluntary or involuntary, sane or insane," the policy "shall become null and void, and the widow and heirs or devisees of said member shall have no claim for benefit on the company, provided, that in case of such self destruction or suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees, only such an amount on this policy as the member shall have paid to this company on this policy, in assessments on the same, without interest."

On the trial, it was admitted that said Sparks died "on the sixteenth day of September, 1892, by intentionally killing himself by cutting his throat with a razor, while insane."

Under the head of "Life and Accident Insurance," section 5855, Revised Statutes, 1889, it is declared: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction

of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

But this policy, as before stated, was issued by an assessment company; the statute in regard to these companies being placed under the head of "Insurance Companies on the Assessment Plan," article 3, Revised Statutes, 1889. Section 5869 of that article, after prescribing certain duties for said companies, and authorizing the state superintendent of insurance to visit and examine into their affairs, as in case of general life insurance companies, contains the following proviso: *"Provided,* always, that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this state, except as distinctly herein set forth."

It is claimed by the defendant that such proviso places the defendant company outside the provisions of section 5855, of the statute of life and accident insurance, declaring suicide of the insured to be no no defense in an action on the policy; and counsel cite us to a recent decision of the supreme court in support of the claim. *Hanford v. Massachusetts Benefit Ass'n,* 122 Mo. 50; s. c., 26 S. W. Rep. 680. The plaintiff in that case sought the protection of section 5849, a section found under the title of "Life and Accident Insurance" aforesaid providing that a misrepresentation by the assured shall not avoid the policy, unless the matter misrepresented actually contributed to the event upon the happening of which the policy was to become due. But the supreme court held that the proviso to section 5869, which we have quoted, placed insurance on the assessment plan wholly without the provisions of the law as to life and accident insurance, except in the

instances saved in the section itself, and denied to plaintiff the protection of the section she invoked. That case is directly applicable to this case, and under the provisions of the constitution we can not avoid following it. We are, therefore, compelled to hold that section 5855, relating to suicides, does not apply to policies issued under the assessment plan, of which the policy in suit is one.

2. We must, therefore, determine the case as it stands, unaffected by the statute. It has been frequently held in cases where an insurance policy provided it should be void, if the insured committed suicide, that the provision would not apply to instances where the reasoning faculties of the insured were so impaired that he did not comprehend the moral character, general nature, consequences and effect of the act; notwithstanding he may have known and intended that death would result from his act. The same noneffect was given to the provision in cases where the insured was impelled to the deed by an insane impulse which he was powerless to resist. *Life Ins. Co. v. Terry*, 15 Wall. 580.

The case before us involves a different policy. This policy provides that in case of the suicide of the insured, "whether voluntary or involuntary, sane or insane," the policy shall become void. From such provision, especially when considered in the light of judicial utterances in the line of those in the *Terry case*, it is apparent that the parties to this policy meant to avoid all question of moral responsibility, and of knowledge between right and wrong on the part of the insured. But differences yet remain in the judicial conclusions which have been announced on policies containing the additional words just quoted from this policy. The case of *De Gogorza v. Ins. Co.*, 65 N. Y.

232, contains an exhaustive decision to the effect that the provision exempting the insurer from liability in case of suicide, "sane or insane," extends to cases where the insured was utterly bereft of reason and incapable of comprehending the result of the act he is about to commit.    There is, however, in that case, a forcible dissenting opinion in which the position of the majority is combatted.    The dissenting members of the court hold that the self destruction must have been intentional, and that, to be intentional, there must have been a capacity to form an intention, or to resist an impulse to do the act. It is not made necessary by the conceded facts in this case to decide whether the provision in this policy would have avoided it, had the insured been insane to a degree as not to know what the probable consequence of his act would be.    As, for instance, to have been so totally bereft of reason as not to know that shooting a bullet into his brain would result in death.    The fact admitted in this case as to the death has been set out, and it covers the statement of the law as made by the supreme court of the United States in *Bigelow v. Ins. Co.*, 93 U. S. 284, which has been approved in *Adkins v. Ins. Co.*, 70 Mo. 27.    In the *Bigelow case*, Mr. Justice Davis said, that the policy was avoided by the suicide of the insane insured, if he "was conscious of the physical nature of his act, and intended by it to cause his death," etc.

The language of the admission here is that the insured intentionally killed himself by the act of cutting his throat with a razor.    If he intended to kill himself by that act, he must necessarily have understood the nature of the act.    By changing the form of the words stating the admitted fact, as we have set them out, it is made quite plain that the fact admitted is all that is made necessary to avoid the policy.    If the language used in the admission had been that the insured died in

consequence of cutting his throat with a razor, whereby he intended to kill himself, the meaning would have been clear, yet no clearer than the form used in the record.

Having already seen that we are prevented from allowing to plaintiff the benefit of the provision of the statute disallowing the defense of suicide, we find ourselves without any ground upon which to sustain the judgment and must therefore order it reversed. The other judges concur.

### ON MOTION FOR REHEARING.

ELLISON, J.—Counsel practically admits that if the decision of the supreme court in *Hanford v. Ins. Co.*, 122 Mo. 50, is followed by this court, it will defeat plaintiff's case. But he insisted in his brief (and now on motion for rehearing) that we should pass upon the question as an original proposition, and if we concluded the supreme court had erred in its conclusion in that case, we should refuse to follow such decision, by deciding the case in plaintiff's favor and then certifying it to the supreme court. By provision of section 6, article 6, of the constitution, the last ruling of the supreme court on any question of law or equity applicable to a case before this court, "*shall* in *all* cases, be *controlling authority*" in this court. Counsel seems to be aware of this provision, but yet urges that since the decision of the supreme court in question here is one of the first impression and was evidently rendered without having had attention called to the arguments and reasons now advanced against the correctness of the conclusion reached in that case, we should not accept it as authority, but render judgment for plaintiff in spite of it and then certify to the supreme court, to the end that that court might again consider the question

involved. The only mode pointed out by the constitution for certifying a cause to the supreme court (relating to conflict of decisions with the supreme court) is, when *one* of the judges of this court deems the decision of this court contrary to a decision of the supreme court. It is not contemplated by the constitution that a majority of this court will render a decision in conflict with the supreme court; indeed, as we have seen, the constitution pointedly directs this court not to do so.

Zeal of counsel is commendable, especially when directed in a cause which appeals to sympathy. But it must not be forgotten that the opposite party has rights under the law which, when insisted upon, can not be disregarded. It is a right belonging to a litigant to have judgment in this court in accordance with the last previous ruling of the supreme court. So, if we determine that the case presented to us by a litigant is covered by a decision of the supreme court, we have but one duty to perform and that is to give him judgment in accordance therewith. And if we should announce in an opinion that a case was covered by a decision of the supreme court and yet refuse to follow it, we would, besides stultifying ourselves, give just cause to the party aggrieved for enforcing his right by *mandamus*. And if we should, under such circumstances, certify such a case to the supreme court, that court would, doubtless, retransfer the cause, since it would have no warrant, under the constitution, to assume jurisdiction thereof, the contingency not having arisen for its transfer from this court.

Recurring to the reason assigned by plaintiff why we should certify this case, we can only say, that, if the fact that reasons are uged before us in this case which were not suggested to or considered by the supreme court in the *Hanford case,* is sufficient reason for not

following that case, then we are at liberty to nullify the constitution and refuse to follow any case from that court. For, it must be apparent to all, that a case could scarcely be found where zealous and ingenious counsel could not urge something here which did not appear to have been urged there.

The vital point in the case at bar was decided adversely to plaintiff by the supreme court in the case referred to, and we can not discover how it would serve any useful purpose for us to discuss the different points so fully and clearly presented by counsel.

In directing the final order as to the judgment in this cause, we, at the time, overlooked that defendant conceded to the plaintiff a right, under the terms of the policy, to a judgment for premiums paid amounting to $30.40. While we shall overrule the motion for rehearing, we will so modify the judgment heretofore rendered, that the cause may be remanded, to the end that the circuit court may enter the proper judgment for said sum. The other judges concur.