CITY OF NEVADA to use of GILFILLAN v. EDDY *et al.*,
*Appellants.*

Division Two, June 26, 1894.

1. **Municipal Corporations, Powers of.** Municipal corporations can exercise only such powers as are expressly granted or necessarily implied.

2. ———: CORPORATE ACTS: CHARTER. Corporate acts must be performed in the manner directed by the charter.

3. ———: ———: ———: STREET IMPROVEMENTS. Where its charter empowers a city to enact ordinances to make street improvements, assessments levied for that purpose by a resolution are void.

4. **Constitution:** RAILROAD: CITY SPECIAL TAX. Article 12, section 14, of the constitution, which declares that railways are highways and railroad corporations common carriers, does not exempt land used by a railroad for depot and yard purposes from special taxes for street improvements.

*Appeal from Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED.

*Jackson & Montgomery* for appellants.

(1) The land sought to be charged with the special tax is a part of the Missouri, Kansas & Texas railway grounds in Nevada. This block 32, as originally described, was acquired as a part of the right of way and yards of the railroad in that city, and has ever since been used in connection with the other lands for the purposes of the railroad in the transaction of the business of a common carrier, and it is, therefore, part of a public highway. Const. of Mo., art. 12, sec. 14; R. S. 1889, sec. 2630. This ground is, therefore,

not subject to special taxes for the improvement of another highway. 2 Dillon on Municipal Corporations, sec. 809; *St. Louis v. Allen*, 53 Mo. 44; *Neenan v. Smith*, 50 Mo. 525; *Farron v. St. Louis*, 80 Mo. 379; Rorer on Railroads, 1492; *Owners v. Mayor*, 15 Wend. 374; *Railroad v. Jersey City*, 36 N. J. L. 56; s. c., 42 N. J. L. 97; *Railroad v. Board*, 7 Hun, 652; *People v. Gilonebal*, 41 Hun, 510; *Bridgeport v. Railroad*, 36 Conn. 255; *Railroad v. New Haven*, 42 Conn. 279; *Railroad v. Philadelphia*, 88 Pa. St. 424. (2) The proceedings of the city officers of Nevada under which the tax bill sued on, and the tax bill itself, are void, because: *First.* The only foundation or authority for making the improvement in question, was a resolution of the council, when the charter of the city required an ordinance therefor. R. S. 1889, sec. 1495; *Ruggles v. Collier*, 43 Mo. 353; *Kiley v. Oppenheimer*, 55 Mo. 374; *Leach v. Cargill*, 60 Mo. 316; *Mathews v. Alexander*, 68 Mo. 115; *Thompson v. City*, 61 Mo. 282; *Irwin v. Devoe*, 65 Mo. 627; *Galbreath v. Newton*, 30 Mo. App. 380; *Cape Girardeau v. Fongen*, 30 Mo. App. 551; *Brick Co. v. Hamilton*, 51 Mo. App. 120. *Second.* There was not, in any proceeding relating to the work in question, any reference to, or any adoption of, the specifications contained in the general ordinance number 138, of July 12, 1888. *Galbreath v. Newton*, 30 Mo. App. 380; *Becker v. Washington*, 94 Mo. 375. *Third.* The council, by resolution, delegated to the city clerk the power and duty of assessing the tax to pay for this improvement, when the law required the council to assess the same by ordinance. R. S. 1889, secs. 1495, 1496, 1498 and 1501, and cases under first subdivision. (3) The above defects were specifically pointed out and covered in the several instructions prayed by the defendants, correctly declaring the law as applicable to the facts, and it was error to refuse

them.    (4) As the law required such improvements to be made under a valid ordinance duly enacted, and that the tax to pay for the same should be assessed by an ordinance of the city council, approved by the mayor of the city, to delegate, by resolution, to the city clerk the power to make such assessments, was a disregard of legal method and procedure, and was contrary to the law of the land, and, if sustained, would deprive the defendants of their property without due process of law, and the proceedings are, therefore, unconstitutional and void.    Const. of Mo., art. 2, sec. 30; Const. of U. S., amend. 14, sec. 1. (5) The judgment was void.    It was a personal judgment, which is unauthorized in a suit on a special tax bill.    *Neenan v. Smith*, 50 Mo. 525; *St. Louis v. Allen*, 53 Mo. 44; *St. Louis v. Bressler*, 56 Mo. 286; *Kiley v. Forsee*, 57 Mo. 390; *Louisiana v. Miller*, 66 Mo. 467.

*M. T. January* for respondent.

(1) Appellant's brief does not contain an assignment of errors, such as is contemplated by rule 15 of this court.    Hence the appeal should be dismissed. Rule 16, supreme court.    (2) The appeal in this case was taken by filing a certified copy of the judgment and order granting the appeal under section 2253, Revised Statutes, 1889, and it does not affirmatively appear in either the printed abstract or brief of appellants, that the bill of exceptions was filed within sixty days allowed after the May term, 1892, of the circuit court, or that the bill was ever filed in said court. Therefore the bill of exceptions should be disregarded. *Mason v. Pennington*, 53 Mo. App. 118; *Hohstadt v. Daggs*, 49 Mo. App. 157; *Williams v. Williams*, 26 Mo. App. 408, and cases cited; *La Follette v. Thompson*, 83 Mo. 199.    (3) There is no error in the record

proper. The judgment is not personal, but *in rem*, and nothing but a special execution could issue under it, and any mere defects of form can not be reached in the absence of a motion in arrest. There was no motion in arrest filed. (4) The tax bill was *prima facie* evidence of the "validity of the bill, of the doing of the work and furnishing of the materials charged for and of the liability of the property to the charge stated in the bill." R. S. 1889, sec. 1499; *Keith v. Bingham*, 100 Mo. 300. (5) Therefore it devolved on defendants to show affirmatively that some jurisdictional step is lacking in the proceedings of the city council, and proof of certain proceedings on certain pages of the journal does not prove that there is no record of proceedings relating to the same matter in other parts of the journal. Thus proof that the city clerk failed to find among his papers an estimate of the proposed improvement, made by the city engineer, does not prove that such estimate was not filed. *Non constat* but the estimate was filed and spread at length on the journal. (6) After the work is finished by the contractors and accepted by the city, the assessment of the tax on the property chargeable, is a mere apportionment—is a ministerial duty and can be delegated to the clerk. *Nevada to use v. Morris*, 43 Mo. App. 586. (7) Block 32 of Dodson's addition to the city of Nevada is a well defined tract of land—was used only by private parties for elevator and packing house purposes—the public could not compel the railroad company to maintain these; therefore no public right would be infringed by subjecting this piece of ground to the special tax and selling it. (8) What property will be benefited and, therefore, shall be chargeable with a special tax for local improvements, is to be determined by the legislature only. Elliott on Roads

and Streets, middle of page 390 to bottom page 393; *St. Louis v. Ranken*, 96 Mo. 497.

GANTT, P. J.—This action was brought in the circuit court of Vernon county to enforce a special tax bill against a tract of land described in the petition as "all of block 32 Dodson's addition to the city of Nevada, Missouri," as the property of the Missouri, Kansas & Texas Railway, on account of curbing and guttering in front of or along the west side of said block, as alleged.

The petition alleged the receivership of defendants; that Nevada was a city of the third class; that on July 12, 1888, the city council passed an ordinance, number 138, "Providing for curbing and guttering streets;" that said ordinance provided, among other things, that "the curbing shall be four inches thick, not less than twenty inches wide, and placed on a level," etc., and "the gutters shall be built of stone not less than five inches thick and three feet long and laid at right angles," etc.; that sealed bids were to be received and the work let to the lowest bidder; that on December 10, 1888, the city council, by resolution, duly passed and published, deemed it necessary to improve by curbing and guttering parts of streets along the blocks described in said resolution, and that on the same day an estimate of the cost of said improvements was made and filed, and on the same day an advertisement for bids was made; that afterwards at a regular meeting of the council on March 4, 1894, "the bid of R. S. Gilfillan being the lowest and best, at the price of 50 cents per lineal foot for curbing, and $1.22½ per lineal foot for guttering with Gilfillan flag stone, and at forty cents and ninety-five cents per lineal foot for curbing and guttering respectively with Clear Creek stone, was accepted and the contract let to him;".

that the work was completed and accepted by the city council at a regular meeting and a special tax to pay for the same was assessed and levied on each tract, and tax bills were ordered to be made, which was done, and the one in suit, with others, was delivered to relator. "The Missouri, Kansas & Texas Railway" was alleged to be the owner of the land above described. Judgment was prayed making the amount of the tax bill, with interest and costs, a special lien on the property, described, and that it be sold to satisfy the judgment.

The answer admitted that Nevada was a city of the third class; that defendants were receivers, as stated; the passage of the ordinance number 138 of July 12, 1888, and the ownership of the property.

As to other matters the answer was a general denial, and, further answering, defendants say: "That said block 32, in Dodson's addition to the city of Nevada, Missouri, on the twelfth day of July, 1888, was, ever since has been, and now is a part of the right of way, depot grounds and yards of the Missouri, Kansas & Texas Railway at and in the city of Nevada, and as such, during all of said times, having been used, and now is being sued, as a public highway, and is devoted exclusively to the use and purposes of said Missouri, Kansas & Texas Railway as a public highway."

Plaintiff filed a reply which was a general denial.

Upon the trial plaintiff introduced in evidence a special tax bill "for curbing and guttering streets, avenues and alleys in accordance with ordinance number 138 of the city of Nevada, entitled, 'An ordinance for curbing and guttering streets'" and a resolution dated July 14, 1888, entitled resolution "as to guttering and curbing in various parts of this city."

The city clerk then proceeded, by said tax bill, to

certify that there had been made and completed three hundred and forty-two feet of guttering and three hundred and thirty-six feet of curbing in front of and adjoining all of block 32, Dodson's addition to Nevada; that in accordance with said ordinance and resolution he made said tax bill against said parcel of ground in the name of the owner thereof, "Missouri Kansas & Texas Railway" in proportion to the frontage or front feet of said lot or parcel of ground; that he had computed the same and found the cost and apportioned the same; and found the proper amount, which is hereby assessed and charged against said lot, and this tax bill is made out for that amount in favor of R. S. Gilfillan, who is the contractor who furnished the material and did the work. The city council of Nevada has assessed the work so done as a special tax against said lot or ground, and this tax bill constitutes a lien, etc.

Defendants objected to the introduction of this tax bill for the reason that it recited the doing of work not comprehended in any ordinance relied on as authority for the bill, that it simply referred to the ordinance by number 138, without any date, and to a resolution of July 14, 1888, and because there is no authority for doing any such work in the resolution mentioned in the caption of the tax bill. The objection was overruled, and defendants excepted.

This was all the evidence offered by plaintiff.

Defendants introduced Mr. H. W. Isbell, city clerk, and identified the records of ordinances, and the proceedings of the city council of Nevada, and papers which were shown to contain the record and evidence of all that had been done at the time of or affecting the work involved in this case.

Defendants introduced the proceedings of July 12, 1888, being ordinance number 138, referred to in petition and tax bill, which provided:

"Sec. 1. Whenever the city council shall deem it necessary to curb or gutter any street, they shall, by resolution, declare such work necessary to be done and cause publication to be made, and if there is not a legal protest they shall cause the improvements to be made, and contract therefor and levy the tax."

Section 2 prescribes specifications as follows:

"The curbing and guttering shall be four inches thick, not less than twenty inches wide and placed on a level with the side walk, and smoothly dressed on the top edge and cut to a close joint below the gutter line. The gutters shall be built of stone not less than five inches thick and three feet long, and laid at right angles with the curbing, and at an incline conforming to the grade of the street, and the top of said stones shall be dressed to a smooth surface."

"Sec. 3. Before the council shall make any contract, the proper officer must make an estimate of the cost, and no contract shall be entered into for a price exceeding the estimate.

"Sec. 4. After two weeks' publication of the resolution declaring such work necessary, the city clerk shall advertise for sealed bids, and shall let the work to the lowest and best bidder.

"Sec. 5. After completion of the work, the city council shall assess the same as special tax against adjoining lots, fronting on the work done, and each lot shall be charged in proportion to the frontage thereof with the cost of such work. The city clerk shall then make out a certified tax bill of such assessment against each lot of ground, and such bill shall be a lien," etc.

Defendants also introduced proceedings of December 10, 1888. A resolution was passed providing for the guttering and curbing of certain lots and blocks, amongst which was the west side of block 32 of Dodson's addition to Nevada. After describing the places

to be improved, the following occurs: "The curbing shall be as follows: Four inches thick if built of Gilfillan stone, and if Clear Creek stone shall be five inches thick, and not less than three inches wide, placed, etc. The gutters shall be built of stone not less than five inches thick if built of Clear Creek stone and if built of Gilfillan stone not less than four inches thick and three feet long, and laid, etc."

"Therefore be it resolved by the city council of the city of Nevada, Missouri, that said imorovements as hereinbefore specified be made and such steps taken as may be necessary to effect the same. Passed and approved this tenth day of December, 1888."

Defendants then offered the proceedings of February 4, 1889, which was a resolution for advertisement for bids under the resolution of December 10, 1888, and a copy of such notice to bidders which called for bids according to the specifications of the resolution of December 10, 1888, and not according to the ordinance number 138 of July 12, 1888.

Defendants also offered the bid of R. S. Gilfillan, dated August 30, 1888, in making prices for Gilfillan stone, and other prices for Clear Creek stone. Also proceeding of March 4, 1889, showing two bids, one from R. S. Gilfillan (the same as above) for Gilfillan and for Clear Creek stone, and one from C. T. Wilson for Clear Creek stone only. Wilson's bid was not accompanied by a check as required, and the contract was awarded to R. S. Gilfillan.

At the same meeting the city clerk was instructed to enter into a contract with Mr. Gilfillan for said work, and it was further ordered that Gilfillan stone be placed on the west side of block 32, Dodson's addition.

The only contract that could be found with Gilfillan was introduced in evidence. It was dated September 5, 1888. It did not provide for doing the work in

question, and still different specifications appeared from those contain in ordinance number 138, or in the resolution of December 10, 1888, and still leaving a discretion as to the material to be used.

Defendants then introduced the proceedings of August 5, 1889, reciting the completion of the work, and that the same is done according to contract with an exception that he used Gilfillan stone on block 17, instead of Clear Creek. "Whereupon it was ordered that the city clerk make an assessment against each lot of ground on said blocks and compute the cost of making said improvements and assess it as a special tax against said lots, and to issue said tax bills to R. S. Gilfillan."

That was the record in the case. There was no record of any estimate of the cost having been made or filed, and no other evidence of any assessment, except as above set forth, nor of any other ordinance or resolution for curbing and guttering along block 32 of Dodson's addition, nor of any other contract.

This block 32, with the land east and north of it, was originally set apart as "railroad land." A part of the tract so designated on the plat of the town was occupied by railroad tracks. The freight house was on the north part. The passenger depot was on part of it —including part of block 32, and the passway already spoken of was taken out of block 32, from the south end of the depot to Commercial street. South of this was passenger passway and hack stand. Block 32 was used for a grain elevator, scales, a driveway to the scales and thence to the elevator, and a fruit packing house, to the east of these, and on block 32 are tracks used for handling the business from these establishments and for other railroad purposes.

The elevator and packing house were erected by persons who held leases from the railroad company, at

nominal rentals. This was shown to be the customary method with railroads in the west, and was adopted in order to secure business and to facilitate handling it, and to economize in cars and track room.

Upon the conclusion of the evidence defendants asked a demurrer to the evidence on the usual grounds and also assigning as a special reason that the proceedings of the council deprived defendants of their property without due process of law and were in violation of the constitution of the state, on two special grounds. "The first is that the proceedings for doing this work was by resolution, instead of by ordinance; and the second, the assessment of the tax and making the tax bill were under a resolution of the city council, while the law requires that the assessment shall be made by the council by ordinance; and having disregarded these requirements it is not according to law and therefore a violation of the constitution."

The demurrer was overruled and the defendants excepted. Plaintiff did not ask any instructions.

Defendants then prayed twelve instructions based on the various specific defects in the proceedings, and which are set forth at length in the abstract of record. The court refused all of them and defendants excepted.

The court then made a finding and rendered a judgment against defendants which was made a special lien on block 32, etc., "except the north sixty feet used as a street," and a special *fieri facias* was ordered to issue and said property ordered to be sold to satisfy said judgment and costs. Defendants, having ineffectually moved for a new trial, bring the case here by appeal.

I. This action was brought to enforce the collection of a special tax bill issued to the relator for certain curbing and guttering done by him and his subcontractors on Commercial street in the city of Nevada, in

Vernon county. The circuit court rendered judgment against the defendants, who were at the time receivers of the Missouri, Kansas & Texas Railway Company.

No declarations of law were asked or given for the plaintiff and all those asked by defendants were refused. An examination of these refused instructions, in connection with the judgment of the circuit court, will enable us to discover the theory upon which the learned circuit judge tried the case and reached his conclusion.

The defendants asked the court to give this declaration of law in their second instruction: Number 2. "The court declares the law to be that it is necessary, to authorize the curbing and guttering of any street, or along any block in the city of Nevada, that the city council shall pass and the mayor shall approve an ordinance for doing the particular work, and it appearing from the evidence in this case that no such ordinance was passed and that the authority for doing the particular work in question depended alone upon the resolution of the city council, the proceedings for doing said work and the tax bills issued therefor are void and the finding must be for the defendants." The circuit court refused this instruction.

A reading of the record will show that the only ordinance relied on by plaintiff is the general ordinance of the city, number 138, which provided general specifications for the construction of guttering and curbing, "whenever the city council shall deem it necessary to curb or gutter any street, avenue or alley," and a resolution of December 10, 1888, that the council deemed it necessary to improve Commercial street by curbing and guttering.

Now it is settled law that municipal corporations possess, and can only exercise such powers as are granted in express words or those necessarily incident to, or

implied in the powers expressly granted. *St. Louis v. Telephone Co.*, 96 Mo. 623. They are creatures of the law, established for special purposes, and their corporate acts must not only be authorized by their charters, but these acts must be done by such officers or agents, and in such manner as the charter directs. *Ruggles v. Collier*, 43 Mo. 353; *St. Louis v. Clemens*, 43 Mo. 395; *Stewart v. Clinton*, 79 Mo. 603; *Saxton v. St. Joseph*, 60 Mo. 153; *Thomson v. Boonville*, 61 Mo. 282.

This extraordinary power of constructing costly pavements and creating liens upon the adjoining owners finds its warrant in the charter of the city of Nevada, the charter of all cities of the third class in this state under the Revised Statutes of 1889, and is contained in sections 1495, 1496, 1497 and 1498. By these sections cities of the third class are empowered and authorized *to enact ordinances* "to open and improve streets, avenues and alleys, and make sidewalks and build bridges, culverts and sewers within the city."

The contention of the defendants is that the general ordinance number 138 already alluded to, which only specified how the streets should be improved when the council deemed it necessary," did not and could not dispense with the necessity for an ordinance requiring Commercial street to be improved; that this was the only way the law authorized them to assert that right, whereas plaintiff insists that the general ordinance specifying how this character of public work should be done was sufficient when taken with the subsequent resolution of the council.

We think the defendants are most clearly right. The resolution was never intended to dispense with the ordinance. Each performs its separate function.

The resolution is the preliminary expression of opinion of the council that the improvement is neces-

sary.  They are then required to advise the property owners interested of their opinion by publishing this resolution two weeks, and if a majority of the resident owners of the property liable to taxation for said improvement shall not within ten days file a protest against the proposed improvement, *"the council shall have power to cause such improvements to be made,* and to contract therefor and to levy the tax."  In other words, while the council may cause certain streets to be paved, guttered and curbed, before they can exercise that power by ordinance, they must comply with a further condition precedent upon which their power even to pass the ordinance depends.  They must give those who must bear this expense an opportunity to protest, if they desire.  When that condition is complied with, if the majority do not protest, they can improve a street, but only in the manner prescribed by section 1495, to wit, *by passing a lawful ordinance for that purpose.*

The passing of a mere general ordinance prescribing the specifications as to guttering and curbing, etc., when deemed necessary, is not an ordinance requiring certain streets to be improved.  An ordinance requiring Commercial street to be improved in accordance with the specifications of ordinance number 138 would have been sufficient, if the other conditions as to the necessary estimate and resolution had been complied with, but until an ordinance was passed to improve this street there was no legal warrant for the work done, and the tax bill was without foundation in law.  We are aware that in *Nevada ex rel. Gilfillan v. Morris,* 43 Mo. App. 586, a different conclusion was reached by the Kansas City court of appeals, and no doubt followed by the circuit court, in this case, but we are not satisfied with the reasoning of the opinion in that case, and it is disapproved and overruled.

II.  The proposition urged with great ability,

after much research by counsel, is, that block 32 of Dodson's addition to the city of Nevada is not liable to a special tax for street improvements, because it is a part of the right of way and yards of the defendant's railroad and is used in connection with the lands for railroad purposes.

The foundation of this claim is the provision in the constitution of Missouri, article 12, section 14, which declares that railways are "public highways" and railroad corporations common carriers. From the adoption of this article in our constitution, these words "public highways" have been quoted, too often without qualification. In *Farber v. Railroad*, 116 Mo. 81, the learned counsel for the plaintiff, in his fifth subdivision of his brief on page 83, asserted that "the defendant's road is a 'public highway;' *as such it was open to the use of the plaintiff.* Constitution of Mo., art. 12, sec. 14; R. S. 1889, secs. 2630, 2631." And we answered this proposition, thus stated, by quoting the declaration of this court in *Hyde v. Railroad*, 110 Mo. 272, that "the declaration in the constitution that railways in this state are 'public highways' in the connection in which it appears, obviously was not intended to throw them open as thoroughfares for pedestrains. Its object was to lay a foundation for certain kinds of legislative regulation of railways but not to change the nature of the railroad property, or to divert it from the general purpose for which it was designed." Nor is it in any sense a warrant to use the cars of a railway company without the payment of reasonable tolls and in defiance of the management and regulation of the company.

It is due the learned counsel in *Farber's case* to state that, in his oral argument, he did not contend for the position announced so unqualifiedly in his brief, but made it the basis for his contention that in the absence of a statute, the citizen who should board

a train without permission, should not be declared a trespasser.

Neither is the position of defendants true, that, because they are, by the constitution, "public highways," all of their property is exempt from special assessment, just as a public state or county road would be.

The railroad of the company is not in this extreme sense the work of the state. The roadbed and the depot grounds are not public property managed by the company as an agent of the state. On the contrary the company is a private corporation; its stock is the private property of its stockholders, who, as such, own its property. Because its function is to serve the public as a public carrier the state has invested it with the power of eminent domain and reserved to itself the power of visitation and regulation to protect the public so as to secure reasonable fares and tariffs and proper police regulation, but the stockholders, not the state, pay for its property and easements, and it becomes their property.

The state taxes all of its property for general governmental purposes, so that, while for many beneficial purposes it is a "highway," it is misleading to speak of it as a highway in the strict sense of exemption from taxation, because this power is reserved to the state and is constantly exercised over all of its property. The courts have differed widely in their opinions on this subject, even as to taxing the right of way for local improvements, but the case in hand does not call for an expression on the last proposition. The question here is whether block 32, which is adjacent to Commercial street as originally laid out, has lost its distinctive character as adjacent city property, because it has been granted to, or appropriated by,

the company, for "depot and yard purposes," and on which it maintains through its lessees, Messrs. Davis & Company, elevators and warehouses.   Two tracks are laid on this block to reach these elevators and warehouses, and to store and stand cars, but they are not part of the right of way proper.   The argument is, that, as all assessments are based on the principle of benefit, when the court sees that no ·benefit can ensue, under any circumstances, it can, as a matter of law, declare the assessment unlawful.

But it has never been held that there must be a full equivalent in every instance.   The rule of apportionment must be uniform, whether by the front foot or percentage upon assessed valuation, and it is clear that the actual benefits are as various, often, as the different owners of the property.

The power, under section 1495 Revised Statutes, 1889, is in the municipality to determine the necessity of the improvement, subject to the protest of the majority of resident adjoining owners, and to assess it on "all lots and pieces of ground abutting on the improvements according to the front foot thereof." The owner without a building is taxed in the same proportion as the one who owns a valuable business building, or, mayhap, a palatial residence.

This is a lot or block abutting on the improvements, and the statute attaches the lien as upon other *quasi* public property.   The company owns the lot and the statute gives it no exemption.   This conclusion has been reached in other jurisdictions after thorough examinations.   *Railroad v. Connelly*, 10 Ohio St. 159, a case in which Chief Justice WAITE was of counsel for the railroad; *Railroad v. Spearman*, 12 Iowa, 112; *State ex rel. v. Jersey City*, 42 N. J. L. 97; *Railroad v. Hanna*, 68 Ind. 562.

The distinction is made by the supreme court of

Pennsylvania between an assessment of a right of way and an assessment on lands on which were erected a a depot, freight depot and lumber pard. C. J. Paxson, in *Borough v. Railroad*, 20 Atl. Rep. 1052, saying: "We are of opinion that, while the roadbed or right of way of a railroad company is not the subject of a claim for paving, it does not follow that a passenger or freight depot, the ground belonging to the company and used as a lumber yard, or other purpose, may not be subject to such a charge." In another place in the same opinion he says: "It requires no argument to show that the paving of a footway by the side of a railroad track can confer no possible benefit upon the property known as the 'right of way;' hence, the whole theory which justifies such charges fails in this instance. But this reason does not apply to railroad station where passengers assemble to take the trains; much less does it apply to ground used as a freight station, or a lumber yard. It is as important to have a well paved walk to reach a railroad station as it is to any other place." That case in all essential features is like this.

The Missouri, Kansas & Texas Railway Company owns this block abutting on this street. The law permitted it to acquire it for its use, and no reason is seen why it should not take it *cum onere*, like all other owners of land. It must result that it is either liable for assessment in such a case, or the street must go unimproved, or the owners of the opposite side of the street must bear the whole burden. We hold that there is no exemption under the circumstances.

III.  There are numerous other defects in the proceedings in addition to the want of an ordinance requiring the improvement. The council never did determine lawfully whether this work should be done with Gilfillan stone or Clear Creek stone, and its attempt to delegate its duty to make the assessment to the

clerk was without the sanction of law. The clerk might do it as well as the council, but it is a sufficient answer to say that the legislature thought otherwise.

IV. The point made by respondent that the bill of exceptions must be presumed filed out of time is met by the affirmative showing made in answer to that suggestion that it was filed during term time, so that the sixty days' leave became unnecessary.

Inasmuch as the proceedings can not be amended, because no ordinances were passed providing for the improvements, the judgment is reversed. All of this division concur.