CITY OF SEDALIA, to the use of SEDALIA NATIONAL BANK, Respondent, v. GEO. A. GOLD, Appellant.

Kansas City Court of Appeals, December 2, 1901.

1. **Appellate Practice:** STARE DECISIS: STATUTORY CONSTRUCTION. A judicial construction of a statute becomes a part of it and should be adhered to for the protection of rights accruing thereafter, and the doctrine of *stare decisis* should apply unless some paramount reason appears to the contrary.

2. ———: ———: COURT OF APPEALS: CONSTITUTION. Under the Constitution a Court of Appeals must follow the last previous ruling of the Supreme Court on any question of law or equity—and

this notwithstanding its former decision in construing a statute and the fact that the rights under judgment accrued before such former decision was overruled by the Supreme Court.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

REVERSED.

*Barnett & Barnett* and *Montgomery & Montgomery* for appellant.

(1) The statute under which the work was done, requires that the special tax be levied by an ordinance passed after the completion of the work. The failure of the council to levy and assess the special tax by the passage of an ordinance describing each piece of property, giving the name of the owner thereof and the amount with which each lot is charged, renders the taxbills invalid. See sec. 108, page 90, Acts of 1893; City of Nevada ex rel. v. Eddy, 123 Mo. 546; City, etc., v. Mastin, 62 Mo. App. 647; City, etc., v. Jackson, 69 Mo. App. 152; City, etc., v. Collier, 68 Mo. App. 494; Bank v. Ridge, 62 Mo. App. 328. (2) The city council has no authority to delegate the duty of making the assessment to the city clerk and city engineer. City, etc., v. Eddy, 123 Mo. 546; City, etc., v. Mastin, 62 Mo. App. 647; Bank v. Ridge, 62 Mo. App. 324. (3) As to the doctrine of *stare decisis:* (a) This particular statute had never been construed by any appellate court. (b) When plaintiff purchased the bills, the case relied on by plaintiff had been overruled. (c) One decision is not such "a course of decisions," as may be relied on. Bank v. Douglas, 146 Mo. 42, 52; Strarrie v. Cortes, 38 S. W. 154.

*Charles E. Yeater* and *J. H. Bothwell* for respondent.

(1)    The contractors having invested their money and labor and the Sedalia National Bank, the present owner of the taxbills in suit, having bought the same on the faith of the case of Nevada ex rel. Gilfillan v. Morris, 43 Mo. App. 586, which construed the statutes in question, the court under the doctrine of *stare decisis* must hold these particular bills valid, even though it holds the defendant's contention that an ordinance assessing the special tax was necessary after the acceptance of the work.    Railroad v. Fowler, 142 Mo. 687; Long v. Long, 79 Mo. 656; Wilson v. Beckwith, 140 Mo. 381; Dunklin Co. v. Chouteau, 120 Mo. 593; Pittelkow v. Milwaukee, 94 Wis. 651-655; s. c., 69 N. W. 803; Douglas v. County of Pike, 101 U. S. (11 Otto) 686; Olcott v. Supervisors, 83 U. S. (16 Wall.) 690; Life Ins. and Trust Co. v. Debolt, 57 U. S. (16 How.) 432; The City v. Lamson, 76 U. S. (9 Wall.) 485; Taylor v. City of Ypsilanti, 105 U. S. (15 Otto) 71; Sutherland on Statutory Construction, sec. 317 et seq.    (2) The contractors and the bank had a particular right to rely on the construction set forth on February 2, 1891, in the Morris case, because the statutes construed in that case (sections 1495 to 1501, R. S. 1889), were re-enacted in the same terms in sections 108 to 110 of the Act of April 19, 1893, by which the Legislature adopted the construction of the Morris case.    Handlin v. Morgan Co., 57 Mo. 116; Northcutt v. Eager, 132 Mo. 277; Sanders v. St. L. & N. O. Anchor Line, 97 Mo. 30; State ex rel. v. Withrow, 133 Mo. 515; Schawacker v. McLaughlin, 139 Mo. 341; Railway v. Railway, 138 Mo. 597.    (3) Neither of the grounds for departing from a decision, (a) the necessity of preventing further injustice and (b) the necessity of vindicating clear and obvious principles of law, exist here because, conceding the Eddy case to require an ordinance after the completion of the work assessing the tax, this court under its constitutional limitations, could not overrule the decision of the Supreme Court in the Eddy case nor continue a bad precedent, and because all par-

ties acted on the faith of the Morris case, the only existing construction of the statutes, and (c) because under the modern rule the doctrine of *stare decisis,* as to existing rights, is applied at the same time the erroneous precedent is overturned, by providing that the decision shall not be retroactive nor effect rights based on the case declared to be erroneous.　Sutherland on Statutory Construction, sec. 317; Long v. Long, 79 Mo. 656; Railroad v. Clark, 119 Mo. 375; Railroad v. Fowler, 142 Mo. 687.

BROADDUS, J.—On July 29, 1897, the plaintiff as the assignee of White Brothers, instituted this suit in the circuit court of Pettis county to enforce a lien upon a certain lot of the defendant situated on Main street in the city of Sedalia, Missouri.　The petition declares on these special taxbills in three different counts.　The taxbills were issued payable in one, two and three years, and each bill was for the sum of $41.33 1-3 cents, and were assigned to the plaintiff bank on the ninth day of October, 1894.　It appears that the city of Sedalia is a city of the third class.　In August, 1893, the said city passed an ordinance providing for the macadamizing of Main street lying between the west line of Moniteau avenue and the west line of Washington avenue in said city; that in October of the same year White Brothers entered into a contract to macadamize said portion of Main street described; that on the fourth day of January, 1894, White Brothers, having completed their contract with the city for the paving of said street, the work was accepted; and that after the completion and acceptance of the work the cost thereof was duly computed and apportioned among the abutting lots and parcels of land to be charged therewith according to law.　And that the city clerk of said city apportioned the cost of said work among the property-owners, and made out, certified, issued and delivered to said White Bros. special taxbills, duly signed by the mayor and city engineer and attested by the city clerk for the

cost of the construction of said work, including the material used therein, against the lots and parcels of land to be chargable therewith according to law in the names of the owners thereof. The lot of defendant, upon which the lien is sought to be enforced, is described, and the issuing of the special tax-bills in suit are set out.

The answer is of considerable length, but as there is but one point in the case of material importance, it is sufficient to state that the answer raises the question of the legality of the special taxbills. It is conceded that the ordinance under which the work was let to White Bros. provided that upon approval by the city council of the work done under the contract, the city clerk was to apportion the cost thereof among the respective abutting property-owners. The contract in question was entered into under the Act of 1893. Section 108 of said act governs the proceedings in this case and is not materially different from that of the Act of 1887 governing cities of the third class. Said section 108 provides that, "the cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes . . . .," among which are the powers to "open and improve streets, avenues, alleys and other highways . . .," and to provide "for special assessments upon all lots and pieces of ground upon either side of such street . . . .," to be "prorated against the lots or pieces of ground in such block or square abutting on the street improved . . . ." Subdivision seven of said section reads as follows: "The assessments made for making and repairing sidewalks and sidewalk-curbing, and for paving, macadamizing, curbing and guttering all streets, avenues, alleys and other highways, and repairing the same, as herein provided, shall be known as special assessments for improvements, and shall be levied and collected as a special tax, and a special taxbill shall issue therefor, and shall be paid in the manner provided by ordinance. Said special taxbills may bear interest after

thirty days from the date of issue at the rate of eight per cent per annum, and every such special taxbill shall be a lien against the lot or piece of ground described in the same until the same is paid."

On the trial the resolution of the city council declaring the necessity for the work, the ordinance providing how the work was to be done and with what material, and the manner of letting the contract, was in evidence. This ordinance provided, as has been stated, that the city clerk should apportion the cost of the macadam among the abutting property-owners. However, it also provided "that the whole amount of cost or money necessary to macadamize said street, including the squares and areas formed by the crossings of intersecting streets, all as provided for in this ordinance, is hereby levied and assessed as a special tax against and upon the abutting property on both sides of said Main street," etc. This action of the city council delegating to the city clerk the duty of making the apportionment and assessment against each lot or piece of ground, it is claimed by the defendant, rendered the taxbills issued void in law. The trial court took a different view of the question and rendered judgment for plaintiff against defendant for all three of said taxbills. Defendant has appealed and renewed his contention in this court. In the case of The City of Nevada to the use of Gilfillan v. Morris, 43 Mo. App. 586, this court construed this statute practically as it now stands and held that an assessment made similar to the one under consideration was good. The opinion of the court is to the effect:

"After an ordinance has been duly passed authorizing the curbing and guttering of a street, and the work has been done according to contract duly let, no additional ordinance is required to authorize the apportionment of the cost of the improvement along the lots abutting on the street according to the foot frontage, but such duty, being ministerial, may be delegated to the clerk by resolution." This decision was rendered

February 2, 1891, and prior to the transaction in question here.

On the twenty-sixth day of June, 1894, the Supreme Court of the State, in the case of The City of Nevada to use of Gilfillan v. Eddy, 123 Mo. 546, expressly overrules the former case, and among other things decided that the attempt of the city council of Nevada "to delegate its duty to make assessments to the clerk was without the sanction of law." The plaintiff here claims that as the contract was let to White Bros., and the proceedings of the council were had while said decision of Gilfillan v. Morris, ante, was in force and not overruled, it was *stare decisis,* and that it must be construed as part of the statute itself.

The doctrine of *stare decisis* as laid down by the lexicographers and the different courts of this country and England, affords a broad scope for investigation. "It is a general maxim that when a point has been settled by decisions, it forms a precedent which is not afterwards to be departed from. The doctrine of *stare decisis* is not always to be relied upon, for courts find it necessary to overrule cases which have been hastily decided or contrary to principle." See Bouvier's Law Dictionary. "When a court has once laid down a principle of law, as applicable to a certain state of facts, for the sake of the stability and certainty of the law, it will apply that principle to all future cases where the facts are substantially the same." See Anderson's Law Dictionary. Where the law has been settled for many years, and has become a rule of property, and titles have been vested on the strength of it, the error of the law would have to be most palpable to justify this court in overruling previous decisions. Reed v. Ownby et al., 44 Mo. 204.

It was contended in Bank v. Douglas County, 146 Mo. loc. cit. 52: "After a statute or Constitution has been settled by judicial construction, the construction becomes, so far as rights acquired under it are concerned, as much a part of the

statute or Constitution as the text itself, and a change in the decision of the courts is, to all intents and purposes, the same in effect on contracts, as if made by legislative enactment or a constitutional convention." Judge MARSHALL, who delivered the opinion of the court said: "The doctrine thus stated is almost universally accepted as applied to decisions construing statutes, especially where there has been a long line of decisions on the question, but even then the doctrine of *stare decisis* has not been followed where a palpable wrong or injustice would be done, or where the mischiefs to be cured far outweigh any injury that might be done in the particular case by overruling prior decisions. A distinction has also been drawn where only one decision is relied on as establishing the doctrine." "A judicial construction of a statute becomes a part of it, and as to the rights which accrue afterwards it should be adhered to for the protection of those rights." Railway v. Fowler, 142 Mo. 670.

There are at least two cases in this State where a single decision of the Supreme Court was held as *stare decisis,* but the decision in one case had remained undisturbed for sixteen years without criticism (Long v. Long, 79 Mo. 644), and in the other, the statute construed was afterwards re-enacted or continued in force without any change (Handlin v. Morgan County, 57 Mo. 114).

The decision in Gilfillan v. Morris, supra, had been rendered for over three years when it was overruled by the case of Gilfillan v. Eddy, supra. Under the Constitution, this court had sole and exclusive jurisdiction by appeal in the former case, and at the time the decision was rendered there had been no prior ruling of the Supreme Court upon the point involved in the case. Under such circumstances we are bound to assume that said decision was accepted (as was shown in this case) as a proper construction of the statute and acted upon accordingly. And it would be a great injustice to hold that parties who contracted with reference to such construc-

tion of the statute should suffer from the effects of a later decision overruling and repudiating the former decision, if such a result could be avoided.

It appears that R. S. Gilfillan was the plaintiff in both the case of Gilfillan v. Morris and in that of Gilfillan v. Eddy, supra. In the one, under precisely the same circumstances, construing the same statute, his case was sustained; in the other he was defeated. In the latter case the contract was entered into in 1888, six years prior to the decision of the former case; consequently, the doctrine of *stare decisis* did not apply, and the Supreme Court was bound to follow what it conceived to be the law, without reference to the former decision of this court. I have no doubt, had the circumstances of the case of Gilfillan v. Eddy been similar to this, the Supreme Court would have recognized the first case as *stare decisis*.

But since the Supreme Court has overruled it, it can no longer be recognized as a rule of construction of the statute. Under the Constitution, the last previous ruling of the Supreme Court on any question of law or equity shall in all cases be controlling upon this court. "It is a right belonging to a litigant to have a judgment in this court in accordance with the last previous ruling of the Supreme Court. So if we determine that the case presented to us by a litigant is covered by a decision of the Supreme Court, we have but one duty to perform, and that is to give him judgment in accordance therewith. And if we should announce in an opinion that a case was covered by a decision of the Supreme Court, and yet refuse to follow it, we would, beside stultifying ourselves, give just cause to the aggrieved party for enforcing his rights by mandamus." Sparks v. Life Indemnity Co., 61 Mo. App. 109. The Supreme Court in Gilfillan v. Eddy, supra, has left this court the plain duty of following the rule therein laid down and applying it to this case without regard to our former ruling, and without regard to the hardship attending such a course.

Cause reversed.