HEMAN CONSTRUCTION COMPANY v. LOEVY, Appellant.

Division One, February 10, 1904.

1. **Taxbills**: OMISSION OF REFERENCE TO SIDEWALKS IN ORDINANCE. In a suit to enforce a special taxbill against lots, issued to a contractor for improvements to a street, in pursuance to a city ordinance, the validity of the ordinance is not involved by the fact that it does not prescribe the width of the sidewalk, if the suit is not one to recover for making sidewalks. The ordinances of St. Louis provide that the construction of sidewalks may be made by one contractor, and the paving of the streets by another.

2. ———: COMPUTATION BY PRESIDENT OF BOARD. A taxbill is not void because the president of the Board of Public Improvements did not personally compute, levy or assess the cost of the improvement. If he attaches his name to the taxbill, it is immaterial whether the computation was made by him or by an appointee.

3. ———: DELAY IN COMPLETING IMPROVEMENT. If the defense to a suit on a taxbill was based on the theory that the taxbill was void, the property owner can not on appeal have the proportion of the penalty prescribed by the contract for delay in completing the work deducted from the taxbill.

4. ———: WHEN ISSUED. When the ordinance contemplates that the paving of a street and the construction of a sidewalk may be done by two separate contractors, the taxbills for constructing the sidewalk may be issued before the other improvement is completed.

5. ———: JUDGMENT. A judgment in a suit on a taxbill should be made a lien on the property alone. It can not be made a personal judgment against the defendant and his surety on his appeal bond from the judgment before a justice of the peace.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

MODIFIED AND AFFIRMED.

*H. A. Loevy pro se.*

(1)  Ordinance 15,785 is void because (a) it does not prescribe the width of the sidewalks provided for, nor (b) the size, kind or quality of the brick to be used, which can be fixed only by ordinance and not delegated to an officer nor the contractor.  Charter, art. 6, sec. 15; Welty on Assessments, sec. 283; Elliot on Streets, p. 381.  (2)  The contract is void because it does not conform to the ordinance; it fails to require construction of sidewalk ordained, and therefore the tax bill is void.  Cooley, Taxation, p. 656 and note 3; 2 Dill. Mun. Corp., sec. 800.  (3)  The president did not personally compute, levy or assess the cost of the work as a basis for a legal assessment but illegally delegated doing thereof.  Kansas City v. Railroad, 81 Mo. 292; Endlich, Stats., 352; Sutherland, Stats., 405; 19 Am. and Eng. Ency. Law, 456, 463; 1 Beach, Pub. Corp., p. 191.  (4) The work contracted for was not completed for one and one-half months after the time provided; and no deduction of penalty was made, wherefore the bill is void. The burden is on contractor to show that delay is reasonable, not on owner to show it was not.  (5)  The tax bill is void because it was issued before all the work

ordered by the ordinance was done, namely, before sidewalks were laid. A tax bill can not be issued for part of the work ordained. Welty on Assessments, sec. 293; Cooley, Tax., p. 656; Cole v. Skrainka, 37 Mo. App. 423; s. c., 105 Mo. 308; Galbreath v. Newton, 30 Mo. App. 393. (6) The judgment is erroneous, being in part a personal judgment against the owner and surety on his appeal bond.

*Hickman P. Rodgers* for respondent.

(1) The tax bill made a prima facie case for plaintiff, and it devolved upon defendant (after the bill was put in evidence) to show some valid objection to its presumptive force. State ex rel. v. Mastin, 103 Mo. 508; Wolfort v. St. Louis, 115 Mo. 139; Moberly v. Hogan, 131 Mo. 19. (2) A valid special tax bill for work actually done may be issued in lieu of a void one, and when so issued is prima facie evidence. Eyermann v. Blakesley, 13 Mo. App. 407; Riley v. Stewart, 50 Mo. App. 594. (3) The work required by an ordinance for the construction of a street in the city of St. Louis may be subdivided and sub-let in parts to different persons. Eyerman v. Blakesley, 13 Mo. App. 407; Heman Const. Co. v. Loevy, 64 Mo. App. 430. (4) It is not every irregularity or omission that goes to the substance of an ordinance for local improvement. Sheehan v. Gleason, 46 Mo. 100; Cole v. Skrainka, 105 Mo. 303. (5) The form of the judgment may be corrected by mandate of this court, without reversal. Moberly v. Hogan, 131 Mo. 19.

MARSHALL, J.—This is an action to enforce a special tax bill for $127.35, against parts of lots 29 and 28, in City Block No. 4571, in the city of St. Louis, owned by the defendant, issued for the improvement of Morgan street between Sarah street and Newstead avenue, pursuant to ordinance number 15,785, approved

August 21, 1890, under contract No. 2748. The case is here upon a short transcript. The abstract of the record does not set out the pleadings or their substance. It speaks of a petition that was filed in a "justice's court," and quotes one allegation therefrom, but it does not show whether an answer was filed or not. The character of the defense interposed in the circuit court can only be ascertained by reference to the objections that were made upon the trial and to the instructions asked.

At the beginning of the trial the defendant objected to the introduction of any evidence upon two grounds: first, "that the tax bill sued on does not show any levy and assessment on its face; and, second, objections raising constitutional questions decided since the trial adversely to contention of appellant." The court overruled the objections and defendant excepted. What those constitutional questions were is not stated in the abstract of the record, but it appears from the files in the case that the case was appealed to the St. Louis Court of Appeals, and that the appellant filed a motion in that court to transfer the case to this court because a constitutional question is involved, and that respondent's attorney conceded, in writing, endorsed on the motion, that a constitutional question was raised, to-wit: "the validity of special assessments for street improvements under the charter of St. Louis," and that the Court of Appeals ordered the case transferred to this court. In this way the jurisdiction of this court in this case is ascertained.

The case made is this:

August Heman testified that he is the president of the plaintiff company. He testified to the signatures of the president of the Board of Public Improvements and of the Comptroller on the tax bill. On cross-examination he said that the plaintiff is the contracting party with the city, in contract number 2748, dated October 4, 1890, and did the work called for by that contract;

that the defendant's property lies in the second granitoid district of St. Louis; that the work mentioned in this tax bill was begun about the middle of April, 1891, but he did not remember at what time it was completed; that plaintiff did not lay any brick sidewalks under contract 2748 or under ordinance 15,785, and did not at any time lay any brick sidewalks in front of the defendant's property; that there is a granitoid sidewalk in front of defendant's property; that after plaintiff finished the work under its contract, it was inspected and accepted by the city, and a special tax bill was issued therefor; that after plaintiff's suit on that tax bill was dismissed, that tax bill was cancelled and a new tax bill was issued, being the special tax bill sued on in this case. The plaintiff then offered the special tax bill in evidence. The defendant objected thereto on the ground that the bill does not on its face contain any levy or assessment by the president of the Board of Public Improvements as required by the city charter. The objection was overruled, the defendant excepted and the tax bill was read in evidence. The tax bill shows that the total cost of the work done under the contract was $19,328.65; that the total frontage taxed was 4932.57 feet; that the rate per front foot was $3,918.58; that the front of defendant's property taxed was 32.50 feet, and that the amount charged against the defendant's property was $127.35. The certificate of the president of the Board of Public Improvements is that the rates, prices and amount are correct; that the person named as owner is liable for the bill; that the work was done and the materials furnished by the contractor, and that the special tax assessed against defendant's property does not amount to twenty-five per cent of the assessed value of the property.

Thereupon the plaintiff rested. The defendant de-

murred to the evidence, the court overruled the demurrer and the defendant excepted.

To sustain his case the defendant adduced the following evidence: He proved by Charles Varrelman, assistant street commissioner, that the plaintiff was given notice to begin the work on April 14, 1891, and he supposed it began about one week thereafter, and that ordinarily the entire work is finished about two weeks before it is measured. J. H. Scott, an inspector in the street department, testified that he inspected the work every day; that on August 18, 1891, he reported to the department that he had inspected the work and found it to be in accordance with the contract, and that it was ready for measurement; that it takes ten days to two weeks as a rule to measure work after it is accepted; that plaintiff did not lay any brick sidewalks under his contract. The defendant then offered in evidence the final measurement of the work, but the date thereof is not stated in the abstract. The defendant then offered in evidence ordinance number 15785, the first, second and fourth sections of which are the only sections that are material to the determination of this case, and they are as follows:

"Section 1. The Board of Public Improvements is hereby authorized and directed to cause Morgan street between Sarah street and Newstead avenue to be graded, curbed, guttered, a Telford pavement, with a binding material and top dressing, laid on the roadway, the crosswalks and the sidewalks to be constructed, and all proper connections and intersections with other streets and alleys to be made.

"Sec. 2. The curbing, guttering, crosswalks and Telford pavement shall be of limestone, the binding material shall be of sand, and a top dressing of gravel shall be used to cover the surface of the roadway. The material for the sidewalks shall be 'paving brick.' The lateral and cross gutters, the crosswalks and the sidewalks shall be laid on a bed of clean, coarse sand.

"Sec. 4.   The cost of curbing, guttering, Telford pavement, binding material, top-dressing, rolling, sidewalk paving, and all proper connections and intersections required, shall be charged as a lien upon the adjoining property fronting or bordering on the improvements herein provided for, and shall be paid by the owners thereof, except as hereinafter provided. When the work under any one contract is completed, the president of the Board of Public Improvements shall compute the cost thereof, and levy and assess the same as a special tax against each lot of ground chargeable therewith, in the names of the owners thereof respectively, in the proportion that the linear feet of each lot fronting or bordering on said improvement bears to the total number of linear feet of all the property chargeable with the special tax aforesaid, and shall make out and certify to the Comptroller, on behalf of the contractor, bills of such costs and assessment accordingly, as required by law."

The defendant then introduced ordinance number 16630, approved March 25, 1892, establishing the Western granitoid sidewalk district. The defendant then called as a witness Robert E. McMath, the president of the Board of Public Improvements, who testified that he did not make out the special tax bill; did not make the calculations on which it is made out; did not know the cost of the work or the frontage to be taxed; did not figure out how much the defendant's property was liable for, but that all such work was done by one of his appointees in his office who had charge of special tax bills, and that the tax bill in question came to him in the usual course of business in his office and he signed it.

The defendant testified that he had a granitoid sidewalk laid, under private contract, in front of his property after ordinance 16630 went into effect; that there are no brick sidewalks in the block on which he lives nor in the one south of it.

The abstract recites that the defendant then read in evidence contract number 2748, under which the work in question was done.    The contract is not set out in full or in substance.    It is stated that the plaintiff agreed thereby to do "the work of grading, curbing, guttering, construction of Telford with top dressing of sand and gravel and rolling and also constructing sidewalks on Morgan, between Sarah and Newstead, as by said ordinance specified," etc.    Two sections or paragraphs of the contract are then reproduced, the first of which denies to the contractor any damages for delay or hindrance on the part of the city, but allows an extension of time in case of delays caused by the city, and the second of which provided that the plaintiff should not be required to begin work until April 14, 1891, and then only after one week's notice so to do, and that when commenced, the work should be continued uninterruptedly, and should be completed within two and one-half months, and that the time of beginning, rate of progress, and time of completion were essential conditions of the contract, and that if plaintiff did not complete the work within the time specified, the sum of twenty dollars a day should be deducted from the moneys payable under the contract.

The abstract of the record then recites: "Nothing is said in the contract that plaintiff is required to construct sidewalks."  So that the abstract of the record in speaking of the sidewalks, recites, first, that the plaintiff contracted to construct sidewalks, and, second, that "nothing is said in the contract that plaintiff is required to construct sidewalks."

The defendant then rested.    In rebuttal the plaintiff called C. C. Hartman, who testified that the defendant's sidewalk was laid on or before March 15, 1892, (which was before the approval of the granitoid ordinance number 16630, as that ordinance was not approved until March 25, 1892); that at the time of the adoption of ordinance 15785 (for the improvement of

Morgan street) there was but one kind of sidewalk paving brick known; that sidewalks on both sides of Morgan street, between Sarah and Newstead avenue, had been fully laid before the tax bill sued on in this case was issued.

The plaintiff also called as a witness L. Olthus, a draftsman in the street commissioner's office, who verified a plat of Morgan street between Sarah street and Newstead avenue, which showed a number of brick pavements laid at that place, ''by the annual contractor for brick work with the city, and special tax bills were issued in his favor for the work.'' The abstract of the record then recites that the witness testified as follows: ''The city did not make any contract with the plaintiff or any one else under ordinance 15785 to lay brick sidewalks as provided for in ordinance 15785. There are no brick sidewalks on Morgan street in the block in which defendant's property lies, nor in the block directly south of it. All the granitoid sidewalks on Morgan between Newstead and Sarah were laid by the owners themselves. This book does not show when the annual contractor laid the brick sidewalks shown by this plat.'' This was all the evidence in the case according to the abstract of the record.

At the instance of the plaintiff the court declared the law to be that if all the sidewalks on Morgan street between Sarah street and Newstead avenue were laid before ordinance 16630 was approved on March 25, 1892, then that ordinance has no bearing on this case, and the plaintiff is entitled to a special judgment, with interest.

The defendant asked ten instructions and the court refused to give them and defendant excepted. They need not be reproduced in full, as the propositions of law contained therein are the points relied on here by the defendant, and they will be discussed in the opinion.

The court found for the plaintiff, and the defendant appealed.

## I.

The first contention of the defendant is that ordinance 15785 is void because it does not prescribe the width of the sidewalks, nor the size, kind or quality of the bricks.

Two sufficient answers suggest themselves to this contention: First, it is wholly immaterial in this case, because this is not a suit to recover for making sidewalks and, second, the width of sidewalks is ordinarily established by general ordinances adjusting the width of the sidewalks to the width of the streets, and it is not shown that there was no such general ordinance in St. Louis; and the undisputed testimony is that at the time this ordinance was adopted, there was only one kind of paving brick for sidewalks known or used in St. Louis.

Aside from this, it is conceded by defendant and made a point against the validity of the contract, that the plaintiff's contract did not require it to construct any sidewalks. Hence as to the plaintiff's right to recover, the sidewalks cut no figure.

## II.

The second contention of the defendant is that the contract is void, because it does not conform to the ordinance, in that, it fails to require the construction of a sidewalk, and hence the tax bill is void.

Section 15 of article 6 of the charter of St. Louis provides that all ordinances recommended by the board shall specify the character of work, its extent, the materials to be used, etc., and then concludes: "And provided, further, that nothing in this article shall be so construed as to prevent the Board of Public Improvements, through the proper officer thereof, from annually letting and entering into contracts on the first day of July of every year, for the grading, constructing, reconstructing and repairing of sidewalks and repairing street, alley and gutter paving and such other similar

work, which may be ordered by ordinance or may become necessary to be done during the year."

The evidence in this case shows that there was such an annual contract outstanding when the contract was made with the plaintiff for the construction of the street and that the contractor thereunder laid some of the sidewalks on Morgan street. There being such an annual contract, the contractor thereunder had a right to lay the sidewalks ordered by this ordinance, and it would have been manifestly illegal and improper for the city to have included the sidewalks in the plaintiff's contract. This easily accounts for the omission of the sidewalks from the contract in question here.

The ordinance itself shows on its face that the Municipal Assembly knew there was such an annual sidewalk contract, and intended that the contractor thereunder should lay the sidewalks ordered by this ordinance, and also contemplated that the work to be done by the plaintiff should be paid for as soon as completed, and that the work done by the annual sidewalk contractor should be paid for as soon as completed, and that the payment under each contract should be made irrespective of whether the work covered by the other contract was completed or not. This is made certain by section four of the ordinance, which provides that the cost of constructing the street and the sidewalk shall be charged as a lien on the adjoining property, and then saying, "*When the work under any one contract is completed,* the president of the Board of Public Improvements shall compute the cost thereof and levy and assess the same as a special tax," etc.

This can mean nothing else than that the work shall be done by two contractors, one for the street and the other—the annual contractor—for the sidewalks, and that each shall be paid for his work as soon as it is completed, without regard to whether the other has completed his contract or not. There is no room to doubt

that such was the intention of the lawmakers and none as to their power to so ordain.

This feature of the ordinance was not called to the attention of the St. Louis Court of Appeals when it decided the case before it, and held that the tax bill to the plaintiff was prematurely issued because the sidewalks had not been laid at the date the tax bill was issued. [Heman Construction Co. v. Loevy, 64 Mo. App. l. c. 437.] If that court's attention had been directed to this provision of the ordinance, it would not have held that the plaintiff's tax bill was prematurely issued.    For these reasons the defendant's second contention is untenable.

## III.

The defendant's third contention is that the tax bill is void because the president of the Board of Public Improvements did not personally compute, levy or assess the cost of the work.

In support of this contention the defendant relies principally on City to use v. Eddy, 123 Mo. 546.    In that case it was held that the power conferred upon cities of the third class to order construction of streets was vested in the city council, and that it must be exercised by ordinance and not by resolution, and that the power to assess the cost of such improvements was vested in the city council and must be exercised by ordinance, and could not be delegated by the council to the clerk of the council.    In that case the work was ordered by resolution and by resolution the clerk was ordered to assess the cost and issue the tax bills, which he did.

That case is not decisive of, or pertinent to the contention here made.    Here the tax bills were signed and issued by the president of the Board of Public Improvements, the officer charged with that duty and vested with that power.    It is true that the president of the board did not make the computation, and that the figuring and

the physical act of writing the tax bills, was done by his appointee. But when the president attached his name to the tax bill, that became the consummate act of computing, assessing and levying the tax. What the clerk did became merged in the act of the president, and the whole thing was then the same in law as if the president had himself done every act in connection with the matter. The president could not be heard to say it was not his act, nor could he evade any responsibility arising out of it, by saying his clerk did the figuring and writing.

The work that was done by the clerk was not an unlawful delegation of power of the president to the clerk. The work done by the clerk consisted of the physical act of writing the tax bill, and the doing of a very simple sum in arithmetic. The sum required to be done was this: the cost of the work amounting to $19,328.65 was to be distributed against each lot of property abutting the improvement in the proportion that the frontage of each lot bore to the total frontage of all the property abutting the improvement. The ordinance itself prescribed that the cost should be so distributed. The total frontage of all the property abutting the improvement was 4932.57 feet, and the total frontage of the defendant's property was 32.50 feet. Hence the sum to be done was what is

$$\frac{32.50}{4932.57} \text{ of } \$19,328.65 ?$$

Any school boy could do that sum. When the clerk did the figuring and wrote out the result on a sheet of paper, it did not constitute a special tax bill. But the instant the president of the board signed his name to the paper, it became a special tax bill, and everything written above his name became his official act, no matter who had written it.

In the very nature of things this must be true, especially as to an office like that of president of the Board of Public Improvements in a large city like St. Louis,

where, in addition to his other manifold duties, he has to issue annually more special tax bills than he could write out by himself.   To illustrate:   In addition to all improvement tax bills, section 29 of article 6 of the city charter provides for sprinkling all the streets of St. Louis, and assessing the cost thereof against all property fronting or bordering on the streets sprinkled, in the proportion that each lot bears to the total frontage of all lots that border upon the streets sprinkled.   Practically this requires a special tax bill to be issued every year against every lot in the city.   It is apparent that no officer could reasonably be expected to compute, assess and levy and make out all the tax bills that are necessary for this purpose alone, even if he had no other duties to perform.   The framers of the law knew no man could do all such work personally, and they must have intended a sensible and rational and practical construction to be placed upon the law, and to have anticipated that the courts could not follow the letter of the law, if it made the law impossible of execution, but would construe the law according to its spirit and purpose.

The elements constituting the basis of calculation were all known, and the act done by the clerk was a mere clerical act, and was no part of the discretionary or judicial or quasi-judicial duty or personal trust, vested in the president.

In the Eddy case (123 Mo. 546) the clerk of the council signed the tax bills.   It did not even purport to be the act of the council.   If the clerk had made the computations and had written out the tax bills and submitted them to the council, and the council had adopted them, and by ordinance ordered them to be issued, it would not have been held that they were void.   This would have made that case a parallel case to the case at bar.   Without this the two cases are entirely unlike.

To illustrate further:   Section 19 of article 5 of the charter of St. Louis provides that after the district assessors of general taxes have completed their assess-

ments, the president of the Board of Assessors "shall make up the assessment books in proper alphabetical order from the plats and returns made by said district assessors, from the return of property holders to the assessor's office, and from the best information he can otherwise obtain, so that said assessment books shall be as nearly as possible a full and complete assessment of all taxable property in the city, the same to be completed on or before the third Monday in March of each year."

It admits of no doubt that it would be a physical impossibility for the president of the Board of Assessors in St. Louis to personally make up such complete assessment books of all the property in St. Louis and have it completed by the third Monday in March of each year.

In addition to this, section 26 of article 5 provides that after the president of the Board of Assessors has so made up his assessment books, and after the Board of Equalization has corrected and equalized his assessment books, "the president of the board shall make out a fair copy of the same, and shall make an abstract of said books, showing the amount of the several kinds of property assessed, and specifying the amount of value of all property within the present boundary line of the city, and the aggregate valuation of all property in the extended limits, and the aggregate value of all property within the city limits as established by the charter, and add thereto his certificate that the same contains a true and correct list of all taxable property of the city of St. Louis, so far as he has been able to ascertain the same."

No one would for a moment believe that the lawmakers intended or expected that the president of the Board of Assessors should personally accomplish such an impossible amount of work, and that the assessment and levy of general taxes would be void because the president of the Board of Assessors did not personally do all the work of computing the amount of each assess-

ment and of actually writing all the assessment books, abstracts, etc., so required. Yet the letter of the law says the president of the Board of Assessors shall do it, and if the defendant's contention here is true, then every assessment of general taxes in St. Louis is void, because the president of the Board of Assessors does not personally do all the acts and things that finally culminate in his signing his name to the assessments.

No court would place such a construction upon the law as to the duty of the president of the Board of Assessors or the president of the Board of Public Improvements. The defendant's third contention is therefore untenable.

## IV.

The defendant's fourth contention is that the work was not completed within two and one-half months as required by the contract, and was not completed until one and one-half months after the time limited by the contract, and that no deduction for the delay was made, and hence that the tax bills are void.

In Heman v. Gilliam, 171 Mo. 258, it was held that delay in completing the work did not make the tax bill void, but that the property owner was entitled to have the proportion of the penalty properly apportionable to his lot, deducted from the tax bill against the property.

The defendant is not in a position to claim such a deduction in this case, for two reasons, first, because he made no such demand for a deduction in the trial court, but on the contrary, as shown by his tenth instruction, tried the case in that court upon the theory that the delay rendered the tax bill void; and second, because there is no substantial evidence in the record that there was any delay whatever. The evidence shows that the notice to begin work was dated April 14th, 1891, and that the plaintiff was required to begin work within a week thereafter, and that it did so begin. But there is absolutely no evidence as to when the work was completed.

The record shows that the inspector reported on Aug. 18th, 1891, that the work was ready for measurement, but there is no evidence whatever that the work was not completed until Aug. 18th, 1891. The defendant lived on the street improved. He was a witness in the case, and neither he nor any one else fixed the date when the work was completed. This contention must therefore also fail.

## V.

The defendant's fifth contention is that the tax bill is void, because it was issued before all the work ordered by the ordinance was done, that is, before the sidewalks were laid.

This is evidently an oversight, for the evidence contained in the defendant's abstract shows, without contradiction, that all the sidewalks on both sides of Morgan street between Sarah and Newstead had been fully laid before this tax bill was issued.

But aside from this, there is no merit in the contention, for, as above pointed out, the ordinance itself contemplated that the work should be done by two different contractors, and expressly provides that when the work covered by any one contract is completed, the tax bills for such work shall issue.

It is only in cases where the work to be done is ordered to be done as a unit, by one contractor, that the rule that requires the entire work to be completed before the tax bill may issue, applies.

## VI.

The defendant's sixth point is that the judgment is erroneous because it is personal against the owner and the surety on the appeal bond, as well as special against the property.

The tax is a lien on the property benefited, and does not constitute a personal debt due by the owner.

So much of the judgment as is personal against the defendant and the surety on the appeal bond is without authority of law, and the judgment is hereby modified by striking out of the judgment the words "of the defendant and Samuel Epstein, surety on the appeal bond herein."

After being so modified, the judgment of the circuit court is affirmed. All concur.